T.C. Memo. 2001-163

UNITED STATES TAX COURT

RICHARD E. & ELIZABETH S. NILSEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 17295-99, 17296-99.          Filed July 3, 2001.

<u>Jerome L. Blut</u>, for petitioners.

<u>Timothy S. Sinnott</u>, for respondent.


MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  In these consolidated
cases, respondent determined that petitioners were liable for the
following additions to tax for the years 1982 and 1983:[1]

---

[1]      Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the years at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

| | Additions to Tax | | |
|---|---|---|---|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1982 | $443 | * | $2,215 |
| 1983 | 10 | ** | --- |

\*     Fifty percent of the interest due on $8,858.
\*\*    Fifty percent of the interest due on $201.

The issues for decision are: (1) Whether, for 1982 and 1983, petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for negligence, and (2) whether, for 1982, petitioners are liable for the addition to tax under section 6661 for a substantial understatement of tax. The issues in these cases relate to the participation of Richard E. Nilsen (petitioner) as a limited partner in a partnership known as Blythe Jojoba II Research, Ltd. (Blythe II or the partnership).

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petitions were filed, petitioners' legal residence was Henderson, Nevada.

Petitioner is a medical doctor specializing in family practice medicine. Petitioner has been practicing family medicine in Las Vegas, Nevada, since 1964. During 1963 or 1964, when petitioner was a medical intern, he became acquainted with a financial adviser named Gary Sheets (Mr. Sheets). At that time, Mr. Sheets began advising petitioner on various financial matters and introduced petitioner to numerous investment opportunities.

Between the years 1964 and 1982, petitioner invested money with Mr. Sheets approximately two or three times per year. Petitioner experienced a favorable rate of financial success with Mr. Sheets' investment suggestions, which consisted primarily of real estate investments such as land development.

During 1982, Mr. Sheets approached petitioner about investing in Blythe II, which was being promoted as an agricultural research and development partnership. Blythe II was the first agricultural type investment opportunity that had been proposed by Mr. Sheets for consideration by petitioner. Mr. Sheets provided petitioner with a fairly voluminous private placement memorandum[2] (the offering), which described the proposed investment in, and the activities to be conducted through, Blythe II. Petitioner admittedly only scanned the document and did not carefully read each page. Instead, petitioner passed along the offering to his certified public accountant, Gary Mathis (Mr. Mathis), who routinely reviewed petitioner's other investment opportunities. After perusing the offering, Mr. Mathis advised petitioner that Blythe II appeared to be a reasonable investment opportunity and that petitioner should be entitled to deductions for research and development costs, as well as other partnership expenses.

---

[2] The private placement memorandum consisted of some 47 pages, plus 8 exhibits, and a table of contents.

Petitioner also contacted Jack Huntington (Mr. Huntington), who operated Huntington Jewelers in Las Vegas, to inquire about the use of jojoba bean oil in the jewelry and watch industry. According to the offering, one of the potential uses for oil extracted from jojoba beans was a substitute for sperm whale oil, which had been banned from importation into the United States in the early 1970's. Mr. Huntington advised petitioner that there was some concern among those in the watch industry about the availability of sperm whale oil as a lubricant and the prospects for any viable substitute. Petitioner did not consult an attorney or any independent expert in the area of agriculture or jojoba plants regarding whether jojoba oil could be a viable or competitive substitute for sperm whale oil. Petitioners, nevertheless, invested in Blythe II.

On their joint 1982 Federal income tax return, petitioners reported wages of $105,100 from petitioner's medical practice and a loss of $20,933 from Blythe II. Including the loss reported from Blythe II, petitioners reported total net losses from various partnerships of $54,575 for 1982. Thus, petitioners reported an adjusted gross income of $51,576 and a total tax liability of $3,181.[3]

---

[3] During May 1985, petitioners filed an amended return for 1982 reporting an increase in adjusted gross income of $17,265 due to the disallowance of another partnership loss
(continued...)

On their joint 1983 Federal income tax return, petitioners reported wages of $86,000 from petitioner's medical practice and a loss of $1,006 from Blythe II. Including the loss reported from Blythe II, petitioners reported total net losses from various partnerships of $33,680 for 1983. Thus, petitioners reported an adjusted gross income of $71,351 and a total tax liability of $9,133.[4]

Blythe II was audited by the Internal Revenue Service and a Notice of Final Partnership Administrative Adjustment was issued to the partnership. The partnership initiated a TEFRA proceeding in this Court, and a decision was entered in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which involved a similar jojoba investment program.[5] In the decided case, this Court held that the partnerships[6] did not directly or indirectly

---

[3](...continued)
claimed on their original 1982 return. On the amended return, petitioners reported a total tax liability of $8,617.

[4]    During December 1987, petitioners filed an amended return for 1983 reporting an increase in adjusted gross income of $6,132 due to respondent's disqualification of a pension and profit-sharing plan to which petitioner made contributions during 1983. On the amended return, petitioners reported a total tax liability of $10,360.

[5]    The tax matters partner of Blythe II signed a stipulation to be bound by the outcome of Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.

[6]    Eighteen docketed cases were bound by stipulation by the outcome of Utah Jojoba I Research v. Commissioner, supra.

engage in research or experimentation, and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of research and experimental expenditures, the Court found that the agreements between the partnerships and the proposed research and development contractor, U.S. Agri Research & Development Corp. (U.S. Agri), had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures. The Court stated that the activities of the partnerships were "another example of efforts by promoters and investors in the early 1980's to reduce the cost of commencing and engaging in the farming of jojoba by claiming, inaccurately, that capital expenditures in jojoba plantations might be treated as research or experimental expenditures for purposes of claiming deductions under section 174." Id.

As a result of Blythe II's TEFRA proceeding, petitioners were assessed tax deficiencies of $8,858 for 1982 and $201 for 1983, plus interest. Subsequently, respondent issued notices of deficiency to petitioners for 1982 and 1983 for affected items determining that petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2) and a substantial understatement of tax under section 6661 for 1982. These additions to tax are the subject of the instant cases.

The first issue is whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2) for both years at issue. Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Respondent's determinations in a notice of deficiency are presumed correct, and petitioners must establish otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(c).[7] Respondent determined that petitioners' underpayments were due to negligence. Petitioners, therefore, have the burden of proving they were not negligent in deducting their share of the partnership's losses. See Estate of Mason v. Commissioner, 64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Bixby v. Commissioner, 58 T.C. 757, 791 (1972);

---

[7]    The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726, added sec. 7491(c), which shifts the burden of proof to the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioners do not contend that their examination commenced after July 22, 1998, or that sec. 7491 is applicable in these cases.

Anderson v. Commissioner, T.C. Memo. 1993-607, affd. 62 F.3d 1266
(10th Cir. 1995).

Negligence is defined as the failure to exercise the due
care that a reasonable and ordinarily prudent person would
exercise under like circumstances.  See Anderson v. Commissioner,
62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607;
Neely v. Commissioner, 85 T.C. 934, 947 (1985); Glassley v.
Commissioner, T.C. Memo. 1996-206.  The focus of inquiry is
on the reasonableness of the taxpayer's actions in light of his
experience and the nature of the investment.  See Henry Schwartz
Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Greene v.
Commissioner, T.C. Memo. 1998-101, affd. without published
opinion 187 F.3d 629 (4th Cir. 1999); Glassley v. Commissioner,
supra; Turner v. Commissioner, T.C. Memo. 1995-363.  Whether a
taxpayer is negligent in claiming a tax deduction "depends upon
both the legitimacy of the underlying investment, and due care in
the claiming of the deduction."  Sacks v. Commissioner, 82 F.3d.
918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see Greene
v. Commissioner, supra.

A taxpayer may avoid liability for negligence penalties
under some circumstances if the taxpayer reasonably relied on
competent professional advice.  See Freytag v. Commissioner, 89
T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd.
on other issue 501 U.S. 868 (1991).  Such reliance, however, is

"not an absolute defense to negligence, but rather a factor to be considered."  Id.  For reliance on professional advice to relieve a taxpayer from the negligence addition to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter.  See id.

The facts pertinent to the instant cases, relating to the structure, formation, and operation of Blythe II, are as discussed in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, with the exception of a few specific dates and dollar amounts.  Blythe II was organized in December 1982, as a limited partnership for the described purpose of conducting research and development (R & D) involving the jojoba plant.  The offering, dated November 30, 1982, provided for a maximum capitalization of $2,968,000 consisting of 350 limited partnership units at $8,480 per unit.  Each unit required a cash downpayment of $2,500 and a noninterest-bearing promissory note in the principal amount of $5,980 payable in 10 annual installments with an acceleration provision in the event of default.  The offering was limited to investors with a net worth (exclusive of home, furnishings, and automobiles) of $150,000, or investors whose net worth was $50,000 (exclusive of home, furnishings, and automobiles) and who anticipated that, for the taxable year of the investment they would have gross income equal to $65,000, or taxable income, a

portion of which, but for tax-advantaged investments, would be subject to a Federal income tax rate of 50 percent.

Petitioners' investment was for four limited partnership units, which required an initial downpayment of $10,000 and execution of a promissory note for $23,920.  Petitioners paid $2,600 each year from 1983 through 1985 and $2,100 per year from 1986 through 1991 on the promissory note.  In 1992, petitioners made a final payment of $3,520.

The offering identified William Kellen (Mr. Kellen) as the general partner and U.S. Agri as the contractor for the R & D program under an R & D agreement.  Additionally, a license agreement between Blythe II and U.S. Agri granted U.S. Agri the exclusive right to utilize technology developed for Blythe II for 40 years in exchange for a royalty of 85 percent of all products produced.  The offering included copies of both the R & D agreement and the license agreement.[8]  The R & D agreement was executed concurrently with the license agreement.

---

[8]    In the instant cases, the Blythe II offering is included in evidence as a stipulated exhibit; however, the stipulated exhibit contains an incomplete copy of the R & D agreement that was attached to the original offering.  To the extent that relevant facts are omitted due to the incomplete copy of the R & D agreement (or other incomplete pieces of evidence) in the instant cases, the Court must rely on findings of fact in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, to which the partners of Blythe II agreed to be bound.  It is petitioners' burden to establish the context in which their deductions were taken.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

According to its terms, the R & D agreement expired upon the partnership's execution of the license agreement. Since the two were executed concurrently, amounts paid to U.S. Agri by the partnership were not paid pursuant to a valid R & D agreement but were passive investments in a farming venture under which the investors' return, if any, was to be in the form of a royalty pursuant to the licensing agreement. Thus, as this Court held in Utah Jojoba I Research v. Commissioner, supra, the partnership was never engaged in research or experimentation either directly or indirectly. Moreover, this Court found in Utah Jojoba I Research v. Commissioner, supra, that U.S. Agri's attempts to farm jojoba commercially did not constitute research and development, thereby concluding that the R & D agreement was designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through large up-front deductions for expenditures that were actually capital contributions. The Court concluded further that the partnership was not involved in a trade or business and had no realistic prospect of entering into a trade or business with respect to any technology that was to be developed by U.S. Agri.

Petitioners here contend that their investment in Blythe II was motivated solely by the potential to earn a profit. Petitioners contend further that their reliance on the advice of

their certified public accountant, Mr. Mathis, should absolve them of liability for the negligence penalty in these cases. Petitioners also argue that, taking into account their experience and the nature of the investment in Blythe II, they exercised the due care that a reasonable and ordinarily prudent person would have exercised under like circumstances. For the reasons set forth below, the Court does not agree with petitioners' contentions.

First, the principal flaw in the structure of Blythe II was evident from the face of the very documents included in the offering. A reading of the R & D agreement and licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered ineffective the R & D agreement because of the concurrent execution of the two documents. Thus, the partnership was never engaged, either directly or indirectly, in the conduct of any research or experimentation. Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement. Any experienced attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the licensing agreement canceling out the R & D agreement. However, petitioners never consulted an attorney in connection with this investment, nor did they thoroughly read the offering themselves.

Secondly, in making their investment in Blythe II, petitioners relied on the advice of their certified public accountant, Mr. Mathis, Mr. Sheets, who was a promoter for the partnership, and petitioner's brief conversation with a local jeweler about the prospects for the use of jojoba bean oil in the watch and jewelry industry.  Mr. Mathis, admittedly, made only a cursory review of the offering and advised petitioners that, based on what he had read in the offering, there was some basis for the investment, there would be some tax advantages, and the investment had, "at least, some potential".  Mr. Mathis testified that the subject tax deductions appeared reasonable to him because they were "one for one" deductions rather than the "multiple write-off kind of investments that were floating around at that time."  Mr. Mathis did not give petitioners a written opinion about the investment, nor did he conduct any independent research or consult any type of agricultural or jojoba plant expert about the investment.  Instead, he relied solely on the representations made in the offering.

Moreover, when questioned by this Court, Mr. Mathis admitted that, at the time he advised petitioners about Blythe II, he had rarely been presented with a question concerning research and development expenses, and he realized that such expenses would have allowed petitioners certain tax benefits above and beyond what would have been provided by an ordinary business deduction.

Despite his relative inexperience with the deductibility of research and development expenses, however, Mr. Mathis failed to conduct any independent investigation to determine whether the specific research and development proposed to be conducted by or on behalf of the partnership would have qualified for deductions under section 174. It is also notable that Mr. Mathis had no educational background or experience in the area of agricultural pursuits.

There is no evidence in the record to suggest that petitioners ever questioned Mr. Mathis about the facts and/or legal analysis upon which he based his recommendations. Further, the record is devoid of any evidence that petitioners asked Mr. Mathis to explain the Blythe II investment to them, particularly those portions of the offering that they had opted not to read or apparently were unable to understand.

The facts in these cases are similar to those in <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206, in which this Court found that the taxpayers:

> acted on their fascination with the idea of participating in a jojoba farming venture and their satisfaction with tax benefits of expensing their investments, which were clear to them from the promoter's presentation. They passed the offering circular by their accountants for a "glance" * * *.

Similarly, petitioners in these cases acted on their enthusiasm for the potential uses of jojoba and acted with knowledge of the tax benefits of making the investment.  The evidence in this record suggests that the nature of the advice given by Mr. Mathis was highly generalized and based primarily on a mere cursory review of the offering rather than on independent knowledge, research, or analysis.  Petitioners failed to show that Mr. Mathis had the expertise and knowledge of the pertinent facts to provide informed advice on the investment in Blythe II.  See Freytag v. Commissioner, 89 T.C. at 888.  Accordingly, petitioners failed to establish that their reliance on the advice of Mr. Mathis was reasonable or in good faith.  See Glassley v. Commissioner, supra.

The Court next examines petitioners' reliance on the advice of Mr. Sheets.  Mr. Sheets had no background or expertise in the areas of agriculture or jojoba plants.  In fact, nearly all of the previous investments recommended to petitioners by Mr. Sheets had been real estate investments, and Blythe II was the first investment of an agricultural nature advocated by him.  Also, because Mr. Sheets was a salesperson for this investment, he had a personal profit motive, and thus a conflict of interest, in advising petitioners to purchase the limited partnership interests.  The advice petitioners allegedly received from Mr. Sheets fails as a defense to negligence due to his lack of

competence to give such advice and the clear presence of a conflict of interest. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Petitioners' reliance on the advice of Mr. Sheets was unreasonable under the circumstances.

Outside of Mr. Mathis and Mr. Sheets, petitioner's sole inquiry into the viability of this partnership's operations was his contact with a jeweler, Mr. Huntington, who advised petitioner that there were concerns in the watch industry about the lack of availability of sperm whale oil as a lubricant and the prospects for any viable substitute for this oil. The Court finds it notable that the offering listed at least fifteen "potential uses of jojoba nuts", only one of which was a lubricant substitute for sperm whale oil; yet, petitioners chose to explore only one of those potential uses by contacting a local jeweler. Some other potential uses listed in the offering were cosmetics, shampoos and soaps, sunscreens, pharmaceuticals, cooking oils, disinfectants, polishing waxes, corrosion inhibitors, candles, animal feed supplements, and fertilizer. Being a physician, it seems logical that petitioner would have had some access to information about the use of jojoba in the pharmaceutical arena; however, petitioner failed to pursue this possibility. Petitioners' failure to investigate any of the other enumerated potential uses of jojoba plants was unreasonable under the circumstances.

Petitioners had no legal or agricultural background or training; yet, they consulted no source of such information prior to investing more than $30,000 in Blythe II. Petitioners contend that, based on the amount of money they were investing in Blythe II, they couldn't justify spending additional funds to research the partnership and its proposed activities. Petitioners argue further that they didn't know where or how to find an appropriate expert to examine the investment. On the contrary, the Court believes that, at a minimum, petitioners could have contacted an attorney to review the offering, provide legal advice surrounding the partnership, and explain the legal ramifications of the licensing agreement canceling out the R & D agreement. A reasonable and ordinarily prudent investor under the circumstances would have consulted an attorney.

Additionally, the Court does not believe that petitioners would have experienced a great degree of difficulty or incurred a great deal of expense in contacting the agricultural department of a nearby college or university or going to another reliable source to inquire about the research and development of jojoba plants and their potential commercial usage, if any. Again, a reasonable and ordinarily prudent investor would have at least attempted to make this type of inquiry under the circumstances.[9]

---

[9]In Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-
(continued...)

Petitioners were not naive investors and should have recognized the need for independent professional advice. See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Glassley v. Commissioner, T.C. Memo 1996-206. In fact, the offering cautioned that prospective investors should not "construe this memorandum or any prior or subsequent communications as constituting legal or tax advice" and urged investors to "consult their own counsel as to all matters concerning this investment." The offering was replete with statements, including the cover page statement that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK", warning of tax risks involved with the investment and the highly speculative nature of the commercial viability of the jojoba plant. The offering contained inconsistent information, such as the statement on page 9 that the general partner "has limited experience in dealing in Jojoba beans and is mainly relying on the R & D Contractor to develop technology and plant cultivars over the term of the R & D Agreement", contrasted with the statement on page 34 that the

---

[9](...continued)
6, the Court noted that there were experimental jojoba plantations located at the University of California at Riverside, California, of which the general partner of Blythe II, Mr. Kellen, was aware.

general partner "pioneered the development of the Blythe Airport as an alfalfa ranch and jojoba farming in Desert Center" and was "familiar with the development of jojoba, citrus, vineyards, alfalfa and asparagus."  Such inconsistencies should have raised a healthy suspicion in the mind of a reasonable and ordinarily prudent investor, even one lacking any legal, tax, or agricultural background.  However, petitioner testified that, prior to investing some $33,000 in Blythe II, he did not even bother to read the entire offering, nor did he make an effort to obtain a reasonable understanding of those portions that he did read.  Moreover, petitioners failed to monitor the progress of their investment after purchasing the limited partnership interests.

The Court is mindful that the Court of Appeals for the Ninth Circuit (Ninth Circuit), the court to which appeals in these cases would lie, has held that experience and involvement of the general partner and the lack of warning signs could reasonably lead investors to believe they were entitled to deductions in light of the undeveloped state of the law regarding section 174. See Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380.  In its holding, the Ninth Circuit explained that the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be "in connection with" a trade or

business for purposes of qualifying for an immediate deduction under section 174. However, in the instant cases, the partnership was neither engaged in a trade or business nor conducting research and development, either directly or indirectly. Additionally, the experience in jojoba research and development of the general partner of Blythe II, Mr. Kellen, was questionable, at best, as evidenced by conflicting statements in the offering. Also, it is apparent from the evidence presented in these cases that Mr. Kellen had minimal involvement in the partnership. Petitioners are precluded from relying upon a "lack of warning" as a defense to negligence when there is no evidence that a reasonable investigation was ever made, and the offering materials contained many warnings of the tax risks associated with the investment.

On this record, the Court finds that petitioners did not exercise the due care of reasonable and ordinarily prudent persons under the circumstances. Consequently, the Court holds that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for each of the years at issue. Respondent is sustained on this issue.

The second issue is whether petitioners are liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509,

sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year. A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. See sec. 6661(b)(1)(A). Generally, the amount of an understatement is reduced by the portion of the understatement that the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return. See sec. 6661(b)(2)(B). If an understatement is attributable to a tax shelter item, however, different standards apply. First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper. See sec. 6661(b)(2)(C)(i)(II). Second, disclosure, whether or not adequate, will not reduce the amount of the understatement. See sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. Petitioners appear to argue that no authority, other than section 174 itself, existed

at the time they claimed the relevant loss.  However, their reliance on section 174, standing alone, does not provide the substantial authority required under section 6661 and accompanying regulations.  Petitioners have failed to show that substantial authority existed for the tax treatment of the Blythe II loss on their 1982 return.

Adequate disclosure of the tax treatment of a particular item may be made either in a statement attached to the return, or on the return itself, if it is in accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B. 680.  See sec. 1.6661-4(b) and (c), Income Tax Regs.  The record indicates that petitioners did not attach a statement to their 1982 return disclosing the specific facts surrounding their Blythe II loss deduction.  Rev. Proc. 83-21, supra, applicable to tax returns filed in 1983, lists information that would be deemed sufficient disclosure if listed on the return itself, without the necessity of attaching an additional statement to the return.  However, none of the specific tax items referenced in Rev. Proc. 83-21 are relevant to the instant cases.  If disclosure is not made in compliance with the regulations or the revenue procedure, adequate disclosure on the return may still be satisfied if sufficient information is provided to enable respondent to identify the potential controversy involved.  See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987).  Petitioners appear to

argue that the Blythe II deduction was clearly indicated on their 1982 return. However, a mere claiming of the loss, without further explanation, is not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted. Petitioners have failed to show that the relevant facts pertaining to their Blythe II loss deduction were adequately disclosed on their 1982 return.[10]

Finally, section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. This Court reviews for abuse of discretion the Secretary's failure to waive the addition to tax. See <u>Martin Ice Cream Co. v. Commissioner</u>, 110 T.C. 189, 235 (1998). Petitioners argue that they acted in good faith and reasonably relied upon the advice of Mr. Mathis in claiming the relevant loss. However, nothing in the record indicates that petitioners requested a waiver for good faith and reasonable cause under section 6661(c). In the absence of such a request, this Court cannot review respondent's determination for an abuse of discretion. See <u>id.</u> In any event, petitioners have not shown that they met the tests of reasonable cause and good faith.

---

[10] As noted earlier, even if an adequate disclosure had been made on the return, such disclosure would not reduce the amount of the understatement attributable to a tax shelter item.

Petitioners have failed to prove that they had substantial authority for their treatment of the partnership loss and that they adequately disclosed the relevant facts of that treatment. The understatement upon which the addition to tax was imposed was $8,858. The understatement is substantial because it exceeds the greater of $5,000 or 10 percent of the amount required to be shown on the return.[11] On this record, the Court holds that petitioners are liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Respondent is sustained on this issue.

Finally, to the extent the Court has failed to address an argument of petitioners herein, the Court concludes such argument is without merit.

Decisions will be entered

for respondent.

---

[11] The amount required to be shown on the return was $17,475, 10 percent of which equals $1,747.50.