ZACHARY H. AND SALLEY SACKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sacks v. Commissioner
Docket No. 19198-90
United States Tax Court
T.C. Memo 1994-217; 1994 Tax Ct. Memo LEXIS 211; 67 T.C.M. (CCH) 2971; May 16, 1994, Filed *211 Decision will be entered for respondent. For Zachary H. Sacks, petitioner: Michael C. Cohen. For Salley Sacks, petitioner: Dennis N. Brager. For respondent: Carol Mason. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Helen A. Buckley pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes for taxable years 1981 and 1982, together with additions to tax and increased interest, in the following amounts: Additions to Tax and Increased Interest
Sec.
Sec.
Sec.
Sec. Year
Deficiency
6653(a)(1)
6653(a)(2)
6661(a) 6621(c)
1981
$ 10,504
$ 525
[1]
--
[2]
1982
77,183
3,859
[1]
$ 19,296
[2]
*212 Petitioners concede that they are not entitled to any losses, deductions, or credits claimed with respect to their interest in Far West Drilling Associates for taxable years 1981 and 1982. Petitioners further concede their liability for increased interest pursuant to section 6621(c) for the underpayment of taxes attributable to the disallowance of losses, deductions, and credits relating to Far West in those years. The only issues remaining for decision are: (1) Whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2), and (2) whether petitioners are liable for the section 6661 addition to tax for 1982. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner Zachary H. Sacks resided in Los Angeles, California, and petitioner Salley Sacks resided in Santa Monica, California. Petitioner Zachary H. Sacks has a B.A. from Yale University and an LL.D. degree from Columbia Law School. Petitioner husband has had his own law firm since 1978 and has maintained a successful *213 worker's compensation defense practice. Petitioner Salley Sacks holds a theater arts degree from Cal State Northridge. Neither Mr. nor Mrs. Sacks has particular expertise in tax or financial matters. This case has arisen out of petitioners' investment in Far West Drilling Associates (FWDA). FWDA is a limited partnership formed in Utah on December 4, 1980. According to its May 11, 1981, offering memorandum, FWDA was to engage in (1) a developmental drilling program, (2) an exploratory drilling program, and (3) the acquisition of a license to use, sell, or lease a new drilling product currently being developed, the Terra-Drill. The partnership offered 220 units at $ 157,500 per unit, with each investor obligated to pay $ 15,000 upon subscription and the balance evidenced by three 8-percent promissory notes, one in the amount of $ 15,000 payable on March 1, 1982, the second in the amount of $ 15,000 payable on March 1, 1983, and the third payable on January 15, 1994, with a balloon payment of $ 112,500. The offering memorandum set forth the anticipated tax losses to be incurred by each investing partner during the first 3 years as follows: Cash
Estimated
Loss as a percent
Year
investment
tax loss of cash invested 1981
$ 15,000
($ 52,500)
350 %
1982
15,000
(52,500)
350 %
1983
15,000
(52,500)
350 %
Total
$ 45,000
$ (157,500)
*214 FWDA is one of several limited partnerships which comprise the Petro-Tech National Litigating Project. This Court has found that FWDA was a tax shelter organized to avoid Federal income tax. Webb v. Commissioner, T.C. Memo. 1990-556, remanded on another issue (9th Cir., Mar. 13, 1994). In Webb, we concluded that each partnership involved in the case was not engaged in an activity with an honest objective of making a profit within the meaning of section 183, and that the transaction lacked economic substance. On November 17, 1981, petitioner husband (hereafter petitioner) signed a subscription agreement to purchase one limited partnership unit in FWDA. Petitioners invested cash in FWDA in the aggregate amount of $ 46,620.28, paid in installments on the following dates and in the following amounts: Date Cash investment
Dec. 7, 1981
$ 15,000.00
Feb. 24, 1982
$ 15,220.28
Mar. 14, 1983
$ 16,400.00
The amounts over $ 15,000 per check represent interest amounts payable per the terms of the notes. As of the date of trial petitioners no longer felt obligated to pay the $ 112,500 note. Prior to entering into the subscription agreement, *215 petitioners received a promotional brochure and an offering memorandum for the partnership. Petitioner was introduced to FWDA when his accountant, Vincent Sisilli, C.P.A. (hereafter Sisilli), of the firm Berliner & Sisilli, sent a promoter of the project to petitioner to discuss an investment opportunity. Petitioner claims that Sisilli not only recommended the investment to petitioner, but also advised petitioner that he, Sisilli, had made an investment in FWDA. The firm of Berliner & Sisilli began preparing petitioners' income tax returns in the late 1970's, although Sisilli had been doing petitioners' accounting for a few years prior to the establishment of the accounting firm. Throughout the years in issue, petitioners did not make it a practice to read carefully the documents or literature pertaining to FWDA. Instead, petitioners relied heavily on the services of Sisilli. Petitioner admitted at trial that he only briefly skimmed such FWDA material as the tax opinion letter which accompanied the offering prospectus, and he spent only a minimal amount of time monitoring the investment. Petitioner is unsure whether he read the promissory notes or the signature page of the *216 FWDA subscription agreement before signing them. Petitioner demonstrated little familiarity with the activities conducted by the partnership or the terms of the notes, and he admitted that he felt it was unnecessary to read the tax opinion letter with any care. Even when petitioners received status reports from the partnership, petitioner would only glance at them. Subsequently, in 1988 petitioners received notice of a class action lawsuit and the possible settlement thereof which was brought on behalf of all partners in Far West and several other partnerships in the Terra-Drill partnerships, under section 10(b) of the Securities Exchange Act of 1934 and other provisions. The settlements, including one with the accounting firm Laventhal & Horwath, produced a fund of approximately $ 14.6 million for the benefit of investors in the Terra-Drill partnerships and, sometime around the end of 1990 petitioner signed the appropriate forms to participate in the settlement and has received cash distributions from the settlement fund. Petitioner also filed suit in 1991 against Sisilli, Berliner, and the firm Berliner & Sisilli for professional negligence and breach of fiduciary duty. Summary *217 judgment was granted in 1993 for the defendants on the ground that the suit was filed after the expiration of the period of limitations. OPINION Petitioner argues that the negligence addition to tax and the section 6661 addition should not apply, because he reasonably relied on Sisilli in all matters relating to his investment in FWDA. Petitioner appears to assign blame and responsibility for all aspects of petitioners' investment to Sisilli. Because of his complete reliance on Sisilli, petitioner felt entitled to do little, if any, fact-finding or monitoring with respect to his investment. He was sure that if anything of any importance occurred, he would be so advised by Sisilli. Petitioner knew very little about the educational and professional backgrounds of either Berliner or Sisilli. Petitioner knew only that they were certified public accountants, and did not know if either accountant possessed any advanced degrees. Petitioner never inquired whether either accountant had any experience in the oil and gas industry or whether either had any expertise in the field of oil and gas, geology, petroleum engineering, or drilling technologies. Petitioners themselves had no such *218 specialized knowledge or experience and had not participated in any other investment involving oil and gas exploration, development, or drilling technologies prior to the investment in FWDA. Neither accountant made representations that he possessed any such expertise. Petitioner did not consult with experts in any of these fields to evaluate the anticipated profitability of the Terra-Drill, as claimed by FWDA, nor did he request from FWDA any documentation of any kind tending to support FWDA's projected revenues. Petitioner did not inspect or ask anyone else to inspect any of the prospective drilling sites, nor did he inspect any model of the Terra-Drill, although he knew that the Terra-Drill had not yet come into existence as a functioning instrument. Petitioner never inquired whether either accountant was paid by FWDA for any sales of partnership interests. In short, petitioners did little concerning their investment, except pay their cash and sign their notes. They did not act as if they were concerned with the cash they had paid into the partnership, nor did they check on the potential success of their purchase. Petitioners placed their full faith in the accountants. Petitioners *219 bear the burden of proving that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). I. Negligence
Section 6653(a)(1) imposes an addition to tax if any portion of an underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do in the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners maintain that they exercised reasonable care in making their FWDA investment and claiming FWDA losses on their 1981 and 1982 tax returns, because they reasonably relied on their accountant regarding both the financial merits of the investment and the propriety of losses they claimed. We disagree. Under certain circumstances, good faith reliance by a taxpayer on the advice of a competent adviser may satisfy the reasonable and prudent person standard. *220 See, e.g., Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). Reasonable reliance on the advice of a competent adviser fully informed as to the relevant facts has been held to be sufficient to avoid the imposition of the addition to tax for negligence. Weis v. Commissioner, 94 T.C. 473, 487 (1990); Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976). Petitioners here, however, have not demonstrated that they were reasonable in relying on their accountant, Sisilli. Furthermore, despite their claim that Sisilli advised them to invest in FWDA, they have not shown what advice, if any, they received from Sisilli. Petitioners did not produce Sisilli to testify at the trial. Petitioners did not advise the Court as to why they failed to call Sisilli to testify. This provides sufficient basis to infer that Sisilli's testimony would not have been favorable to petitioners. See Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968). *221 We, therefore, are left with petitioner's uncorroborated self-serving testimony, which this Court need not accept. See Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159. Petitioners have failed to explain satisfactorily to this Court what Sisilli advised to give petitioners such unwavering confidence in the profitability of the investment or in the correctness of the deductions they claimed. Although petitioners have shown that other clients of Sisilli also invested in FWDA, the record is far from clear as to the nature of the advice upon which petitioners relied or the extent of any discussions they may have had with Sisilli concerning FWDA. Furthermore, we are unable to find that it was reasonable for petitioners to have relied on Sisilli. Petitioners have failed to show that Sisilli had sufficient knowledge of the facts to render a competent opinion. See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Even if Sisilli went to *222 great lengths to promote the investment to petitioners, petitioners ignored red flags and did not act with prudence. The offering prospectus projected that in the first 3 years of the investment, petitioners would be able to deduct 350 percent of their cash outlay. The prospectus prominently displayed the fact that the investment had significant tax risks and could well be challenged by the Internal Revenue Service. Such a business scheme promising tax savings in these amounts should raise doubts in the mind of a prudent investor intending to comply with the tax laws. Cf. Hanson v. Commissioner, 696 F.2d 1232, 1234 (9th Cir. 1983), affg. per curiam T.C. Memo. 1981-675. Petitioners had no reason to believe Sisilli possessed any specialized knowledge at all about oil and gas and, indeed, they never inquired or seemed to be concerned about this matter. The fact that Sisilli was also an investor in FWDA, standing alone, is simply not enough to make it reasonable for petitioners to have put their blind faith in him in this matter. Their failure to ask pertinent questions or even make a cursory investigation beyond the promotional *223 materials before making the investment is not in keeping with the standard of the ordinarily prudent person. See LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992). We have rejected pleas of reliance when neither the taxpayer nor the "expert" relied upon by the taxpayer knew anything about the business. Freytag v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983). Considering the size of petitioners' investment and the very large tax writeoffs relative to cash outlay, further investigation was mandated. See Saviano v. Commissioner, 765 F.2d 643, 654 (7th Cir. 1985), affg. 80 T.C. 955 (1983). Petitioners may have relied upon Sisilli, but it was not reasonable or prudent to have done so. Petitioners urge us to consider the *224 case of Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, in which the United States Court of Appeals for the Fifth Circuit held that the taxpayers, unsophisticated investors with limited prior investment experience and with no formal education beyond high school, were not liable for negligence. The Court of Appeals stated that due care does not require moderate income investors to independently investigate their investments. The facts in Heasley are readily distinguishable from those in the case at bar. These petitioners are not unsophisticated. Both had the intellectual and financial means to handle their investments with more care than did the taxpayers in Heasley. Unlike the taxpayers in Heasley, petitioners were remarkably casual about their investment and made no effort to monitor the investment or conduct any meaningful review of the offering materials or even the subsequent statements. Petitioners were negligent when they filed their returns claiming the deductions and credits in question. Petitioners also argue that this Court imposes too onerous a burden on taxpayers *225 and equates using reasonable care to "something akin to a certified audit". We reject this argument. When considering the negligence addition, we study the particular facts of each case, judging the relative sophistication of the taxpayers as well as the manner in which the taxpayers approached their investment. We are not satisfied that petitioners reasonably relied on Sisilli or that petitioners reasonably believed Sisilli gave petitioners meaningful, informed advice concerning the economic substance of the investment. On this record, we conclude that to the extent petitioners relied on Sisilli it was not reasonable and prudent to do so, and we hold that petitioners have failed to prove they were not negligent in deducting the amounts related to their investment in FWDA. II. Substantial Understatement
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). *226 In general, if a taxpayer has substantial authority for the tax treatment of the item in question, or has adequately disclosed the tax treatment of the item on the return, then the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B). However, if the item which causes the understatement is attributable to a "tax shelter", as is the case here, then the disclosure exception will not apply, and the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably believed that the treatment of the item was more likely than not the proper tax treatment. Sec. 6661(b)(2)(C)(i)(I) and (II); sec. 1.6661-5, Income Tax Regs.
Here the prospectus made clear that the prospective tax losses in the first 3 years were 350 percent of the investors' cash outlay, that significant tax risks existed, and that there was a significant likelihood that the Service would challenge the partnership. Under these circumstances, we cannot conclude that petitioners could have reasonably believed that they were more likely than not entitled to the deductions claimed. Furthermore, *227 because we find that petitioners did not reasonably and in good faith rely on Sisilli, respondent has not abused her discretion in failing to waive the section 6661(a) addition, where petitioners have not demonstrated reasonable cause for the understatement. Accordingly, petitioners are liable for the addition to tax under section 6661(a). Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue; Rule references are the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency.↩
2. The annual rate of interest under sec. 6621(c) is 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to a tax motivated transaction.↩