T.C. Summary Opinion 2001-96

UNITED STATES TAX COURT

DAVID AND IRA KAYE KESSEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16482-98S.                    Filed June 26, 2001.

David Kessel and Ira Kaye Kessel, pro sese.

<u>Rodney J. Bartlett</u>, for respondent.

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined that petitioners were liable for the following additions to tax for taxable year 1982: $523 under section 6653(a)(1); 50 percent of the interest due on an underpayment of $10,460 under section 6653(a)(2); and $2,615 under section 6661. The issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence under section 6653(a); and (2) whether petitioners are liable for the addition to tax for a substantial understatement under section 6661. The issues in this case concern the participation of petitioners as limited partners in the Utah Jojoba I Research limited partnership (Utah I).

Some of the facts in this case have been stipulated and are so found. Petitioners resided in Arvada, Colorado, at the time they filed their petition.

In 1982, David Kessel (petitioner) was a pediatrician, and Ira Kaye Kessel (Mrs. Kessel) was a registered nurse. In 1979 or 1980, petitioner was referred by another physician to Elroy Jones (Mr. Jones) for his financial planning needs. Petitioners believed that Mr. Jones was an independent certified financial planner. During the times they made their investments, petitioners did not know that Mr. Jones worked for Coordinated

Financial Services (CFS). CFS was involved with Utah I as well as some other endeavors. Petitioner assumed Mr. Jones received a commission on every transaction he did for petitioner. Petitioner did not know whether Mr. Jones had a college education or a background in agriculture or research and development endeavors.

For 2 or 3 years prior to petitioners' investment in Utah I, Mr. Jones acted as financial manager and adviser on investments for petitioner's medical practice pension plan. Mr. Jones advised petitioner to invest in stocks, bonds, and mutual funds, as well as in CFS investments. One of the CFS investments was in a real estate investment trust. Mr. Jones also prepared an estate plan for petitioners and showed them how their investments would grow. Petitioners received a rate of return between 10 and 20 percent on their investments during the first 2 or 3 years while using Mr. Jones as their financial adviser. Petitioner considered Mr. Jones a trusted adviser who gave sound advice.

Mr. Jones approached petitioner in early November 1982 about the investment in Utah I. Petitioner was aware that there was a substantial tax advantage from the Utah I investment in the first year. Petitioner did not read the materials provided by the partnership very carefully. He read an article about jojoba that explained that there were many potential uses for it, that the

price of the beans was continuing to increase, and that it was an excellent long-term investment. Petitioner believed that income would come from the production of the jojoba beans and from research and development royalties.

Petitioner talked to his certified public accountant Fred Schutz (Mr. Schutz) about the Utah I investment. Petitioner did not know whether he provided Mr. Schutz with a copy of the private placement memorandum. Mr. Schutz reviewed the investment and concluded there was nothing wrong with it from a tax standpoint. Mr. Schutz prepared petitioners' 1982 tax return.

Petitioners decided to invest in Utah I. In 1982, they paid $10,000 and gave a promissory note to the partnership. Based on their $10,000 "investment", petitioners deducted a $20,919 loss on their Federal tax return in the same year.

Over time, petitioners completely paid off their promissory note to Utah I. In 1989, when petitioners knew CFS was in bankruptcy, CFS sent out a letter asking for the partners to pay their last payments. Petitioners paid Utah I a total of $23,000. Petitioners lost over $100,000 when Utah I and their other CFS investments went under.

On their joint 1982 Federal income tax return, petitioners reported wages from petitioner's medical practice of $129,260 and wages from Mrs. Kessel's job of $30,045. They also deducted

losses of $20,919 from Utah I.  Utah I was eventually audited, and the matter was resolved in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which found that the activities of the partnership did not constitute a trade or business and that the agreements between the partnership and U.S. Agri Research & Development Corp. had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.

As noted, in the notice of deficiency issued on July 17, 1998, respondent determined that petitioners are liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) and for a substantial understatement addition to tax pursuant to section 6661.

Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Respondent maintains that petitioners' underpayment was due to negligence.  Negligence is defined as the failure to exercise

the due care that a reasonable and ordinarily prudent person would exercise under like circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). The focus of our inquiry is on the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment. <u>Henry Schwartz Corp. v. Commissioner</u>, 60 T.C. 728, 740 (1973); <u>Fawson v. Commissioner</u>, T.C. Memo. 2000-195. Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction." <u>Sacks v. Commissioner</u>, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

Under some circumstances, a taxpayer may avoid liability for negligence penalties if the taxpayer reasonably relied on competent professional advice. <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991). However, such reliance is "not an absolute defense to negligence, but rather a factor to be considered." <u>Id.</u> To be able to rely on professional advice as an excuse from the negligence additions to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. <u>Id.</u>

Petitioners were well aware of the substantial tax savings the investment would provide.  Petitioners argued that giving Utah I $23,000 for a $10,000 tax savings would not be a logical tax dodge.  But at the time they invested, petitioners expected to receive both the tax benefits and the royalties and profits from the investment.  They did not expect to lose the money invested.

In making the decision to invest in Utah I, petitioners relied on a cursory reading of the offering and an article. Petitioners did not have any expertise in or knowledge of jojoba farming, and they did not seek the advice of an expert in this area.  The offering clearly stated that the investment was risky. Petitioners did not have an experienced attorney review the offering as the offering itself suggested.  In contrast to their approach to this investment, petitioner relied upon attorneys for legal advice in the formation of a personal service corporation, in the establishment of the corporation's pension plans, in the preparation of contracts with doctors, and in the preparation of wills and estate plans.  A close reading of the offering by an experienced attorney would have alerted petitioners that the "partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement."  Fawson v. Commissioner, supra.  Petitioner's minimal reading about jojoba

could not have provided him with the expertise necessary for determining whether the partnership was viable and had the potential to be profitable.

Petitioners also relied on Mr. Jones' and Mr. Schutz' advice. Unfortunately, petitioners never asked whether Mr. Jones had any expertise in agriculture or research and development, nor even if he had a college education. Mr. Schutz had no expertise in agriculture or research and development issues. We have no evidence of the extent to which Mr. Schutz examined the offering. Petitioners did not establish that Mr. Jones or Mr. Schutz had the expertise and knowledge of the pertinent facts to provide informed advice on the investment in Utah I.

Petitioners claim that they were unsophisticated investors like the taxpayers in Dyckman v. Commissioner, T.C. Memo. 1999-79. They claim this is demonstrated by the fact that they lost around $100,000 on their various investments. The facts of Dyckman are different from the facts of this case. In Dyckman, the taxpayers relied on their long-time friend who was a C.P.A.; they were not aware that the investment in the partnership was designed to produce tax benefits; and they had virtually no experience in financial or investment matters. Id. Petitioners relied on Mr. Jones, whose educational background they were unaware of; they were aware that the investment would produce

substantial tax benefits; and they had been investing for at least two to three years with Mr. Jones. Unfortunately, they relied on Mr. Jones, who had an inherent conflict of interest because of his ties to CFS. Unlike the taxpayers in Dyckman v. Commissioner, supra, petitioners were provided with a private placement memorandum which warned that the offering involved a high degree of risk.

We sympathize with petitioners and what they have been through. However, based on the facts of this case, we find that when petitioners claimed the substantial deduction on their return, they had not exercised the due care of reasonable and ordinarily prudent persons under similar circumstances. Accordingly, we hold that petitioners are liable for the negligence additions to tax imposed under section 6653(a)(1) and (2).

Respondent determined that petitioners are liable for an addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement. An understatement is substantial when the understatement for the taxable year exceeds the greater

of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. The understatement is reduced to the extent that the taxpayer (1) has substantial authority for the tax treatment of an item or (2) has adequately disclosed his or her position. Sec. 6661(b)(2)(B)(i) and (ii).

However, if an understatement is attributable to a tax shelter item, adequate disclosure will not reduce the amount of the understatement, and, in addition to showing the existence of substantial authority, the taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper. Sec. 6661(b)(2)(C)(i). Substantial authority exists when "the weight of the authorities supporting the treatment is substantial in relation to the weight of the authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. Moreover, good faith reliance on the advice of an accountant, without evidence of what authority the accountant relied upon in determining the treatment of such items, is insufficient to show substantial authority. Deplano v. Commissioner, T.C. Memo. 1998-303; Buck v. Commissioner, T.C. Memo. 1997-191.

In this case, petitioners did not provide this Court with any evidence of the authority on which they or Mr. Schutz relied. Petitioners did not adequately disclose their position, nor did

they produce substantial authority for their position.  The underpayment upon which the addition to tax was imposed was $10,460.  The understatement is substantial because it exceeds the greater of $5,000 or 10 percent of the amount required to be shown on the return.  Accordingly, we sustain respondent's determination as to the addition to tax under section 6661(a).

To the extent that we have not addressed any of the parties' arguments, we have considered them and conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.