T.C. Memo. 2001-162

UNITED STATES TAX COURT

NICHOLAS P. RUGGIERO AND ANNETTE M. RUGGIERO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9561-00.                          Filed July 3, 2001.

Nicholas P. Ruggiero and Annette M. Ruggiero, pro sese.

<u>Timothy S. Sinnott</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent determined additions
to petitioners' Federal income tax for 1983 under section
6653(a)(1)[1] in the amount of $167.25 and under section 6653(a)(2)
in the amount of 50 percent of the interest due on the portion of

---

[1]All section references are to the Internal Revenue Code in
effect for the taxable year in issue.

the underpayment of tax attributable to negligence. The additions to tax are "affected items" in that they were determined by respondent with reference to a deficiency owing from petitioners as a result of adjustments to partnership items appearing on a 1983 partnership return. The issues for decision are: (1) Whether the statute of limitations prohibits the assessment of the additions to tax; and if it does not, (2) whether part of petitioners' underpayment of tax was due to negligence or intentional disregard of rules or regulations.

Some of the facts have been stipulated and are so found. The exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioners were residing in Lanoka Harbor, New Jersey.

## FINDINGS OF FACT

Nicholas Ruggiero (petitioner), a licensed mortgage banker and realtor, is a high school graduate who attended college for a year. His college courses included one course in accounting for one year.

### Investment Advice

Sometime in 1983, petitioners went to a Mr. Dan Desmond (Desmond), an insurance agent, to purchase "some small like life insurance" for petitioner Annette Ruggiero. Desmond also showed petitioners some documents indicating that he was a "certified financial planner". Desmond discussed petitioners' insurance

needs, gave some general financial advice, and then recommended that petitioners invest in a jojoba research and development limited partnership. He showed petitioner some pamphlets and some cosmetic products.

Desmond initially offered petitioners an investment in an entity called "New Jersey Agri 83-1" (New Jersey Agri), whose stated intent was to grow jojoba for use as a renewable source of "oils, pharmaceuticals," and cosmetics. Petitioner does not remember receiving a private placement memorandum. Desmond did provide him with certain documents to show him "that this investment was valid". He was shown copies of "Bills from Congress, articles of $50 million investment into jojoba, U.S. Department of Agriculture." After 1983, petitioner received some newsletters from "people with Ph. D.'s". Petitioner introduced into evidence copies of the items of "literature" he said were given to him by Desmond in 1983; all are dated 1984 or later.

From talking with Desmond, petitioner believes that the actual land for the jojoba cultivation was in Blythe, Arizona. Although he did not receive any documentation with respect to his proposed investment in New Jersey Agri, he was told that the farming, research, and development to make jojoba plants grow better was going to be done by an entity called "U.S. Agri" headed by a Mr. Pace. He was advised that he would only be at risk for his cash investment of $5,500.

Petitioner did not pay a fee to Desmond for his financial advice. He assumed that, as with the sale of insurance, Desmond would get a commission from the sale of the jojoba partnership interest. Petitioner knows nothing about jojoba. Although it was their first involvement with Desmond, petitioners based their investment decision solely on what Desmond told them and showed them.

Preparation of the Tax Return

When petitioners received the partnership Schedule K-1, Form 1065, Partner's Share of Income, Credits, Deductions, etc., for 1983 it was for the partnership Arid Land Research Partners (Arid Land). The Schedule K-1 indicates that petitioners have a 2.67-percent profits share interest and that their share of the partnership loss for the year 1983 is $12,407. Petitioners never received a Schedule K-1 for an entity named New Jersey Agri.

With reference to their jojoba investment, petitioners gave their return preparer only the Arid Land Schedule K-1 for preparation of their 1983 joint Federal income tax return. The return preparer told petitioners to "file a tax return in accordance with what is on the K-1". Petitioners deducted a partnership loss from "Arid Land Research PTNR'S" of $12,407 on Schedule E, Supplemental Income Schedule, of their 1983 joint tax return.

Examination of the Arid Land Partnership

Petitioners received Schedules K-1 for the Arid Land partnership for tax years subsequent to 1983 displaying the tax identification number (TIN) 33-0026386.  In the years 1991 and following, petitioners received Schedules K-1 for the "Blythe Jojoba Plantation, L.P." partnership.

On July 2, 1990, the Internal Revenue Service (IRS) sent to petitioners by certified mail a Notice of Final Partnership Administrative Adjustment (FPAA) at "2 Paddock CT Lanoka Harbor NJ 08734-9278".  Petitioners lived at 2 Paddock Court, Lanoka Harbor, New Jersey, from 1988 through the time of trial.  The FPAA states that the IRS has determined adjustments to the partnership return of Arid Land Research Partners, TIN 33-0026386.

Upon respondent's motion at trial, we take judicial notice[2] that on July 2, 1990, a petition in the name of Arid Land Research Partners, Robert E. Cole, Tax Matters Partner, was filed with the Court at docket No. 14600-90.  The parties in the Arid Land case filed on November 1, 1993, a stipulation to be bound by

---

[2]See Fed. R. Evid. 201; United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981)(Court may take judicial notice of its own records of prior litigation closely related to the case before it); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239-1240 (4th Cir. 1989); St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

the result in the Utah Jojoba I Research case at docket No. 7619-90. The Court issued an opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, on January 5, 1998, holding that the partnership was not entitled to research and experimental expense deductions. The Court found that the partnership was not directly or indirectly engaged in research or experimentation, was not engaged in a trade or business, and lacked a realistic prospect of entering a trade or business. On June 4, 1999, the Court entered a decision in the Arid Land case that upheld respondent's diallowance of the partnership losses reported by Arid Land in 1983 and 1984.

On July 3, 2000, respondent sent to petitioners the statutory notice in this case containing respondent's determination of their liability for the negligence additions to tax.

As a result of the decision upholding the adjustments to the 1983 partnership return of Arid Land, petitioners were assessed on July 24, 2000, additional tax of $3,345. Petitioners paid the assessment on August 2, 2000.

OPINION

Petitioners argue that they are not subject to the additions to tax for negligence because: (1) The statute of limitations prohibits assessment of the additions to tax; and (2) they

reasonably relied on the advice of their financial adviser in making the investment in Arid Land.

Treatment of Partnership Items

The tax treatment of any partnership item generally is determined at the partnership level pursuant to the unified audit and litigation procedures set forth in sections 6221 through 6231. Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. The TEFRA procedures apply with respect to all taxable years of a partnership beginning after September 3, 1982. Sparks v. Commissioner, 87 T.C. 1279, 1284 (1986); Maxwell v. Commissioner, 87 T.C. 783, 789 n.4 (1986). Partnership items include each partner's proportionate share of the partnership's aggregate items of income, gain, loss, deduction, or credit. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.

"Affected items" are defined under section 6231(a)(5) as any item to the extent such item is affected by a partnership item. White v. Commissioner, 95 T.C. 209, 211 (1990). Certain affected items require a partner level determination. N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987). Section 6230(a)(2)(A)(i) provides that the normal deficiency procedures apply to those affected items which require partner level determinations. For the years at issue, the additions to tax for negligence are affected items requiring factual determinations at

the individual partner level.  Id. at 745.  The Taxpayer Relief

Act of 1997, Pub. L. 105-34, sec. 1238, 111 Stat. 1026, amended

sections 6221, 6226, and 6230 to provide that the partnership-

level proceeding is now to include the determination of the

applicability of any penalty or addition to tax relating to an

adjustment to a partnership item for partnership tax years ending

after August 5, 1997.

Statute of Limitations

The notice of deficiency relating to the affected items here

was timely issued.  Section 6229(d) provides that the mailing of

an FPAA suspends the running of the 3-year limitations period for

assessing a partnership item or affected item for the period

during which an action may be brought for judicial review of an

FPAA (and, if an action is brought, until the decision of the

court has become final) and for 1 year thereafter.  A petition

for review of the Arid Land FPAA[3] was filed, and the decision was

entered by this Court on June 4, 1999.

Under section 6229(d)(2), the running of the 3-year period

of limitations for assessing a deficiency attributable to a 1983

Arid Land partnership item or affected item was suspended for 1

---

[3]Petitioner testified that he never received a copy of the
FPAA.  Respondent introduced evidence that a copy was sent by
certified mail to petitioners' last known address.  The validity
of a properly mailed FPAA is not contingent on receipt by a
"notice" partner.  Sec. 6223(a); Crowell v. Commissioner, 102
T.C. 683, 692 (1994).

year after the date the decision entered on June 4, 1999, became final.  Since no appeal was filed, the decision became final 90 days after it was entered.  Secs. 7481(a)(1), 7483.  The limitations period for 1983 in this case expired in September of 2000.  Therefore, respondent's notice of deficiency, mailed to petitioners on July 3, 2000, was timely.

Additions to Tax for Negligence

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence includes "any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances."  Chamberlain v. Commissioner, 66 F.3d 729, 732 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228.  Generally, courts look both to the underlying investment and to the taxpayer's position taken on the return in evaluating whether a taxpayer was negligent.  See Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

Under some circumstances, however, a taxpayer may avoid liability for the additions to tax for negligence under section 6653(a) if reasonable reliance on a competent professional adviser is shown.  Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969), affg. T.C. Memo. 1968-98; Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Such reliance is not an absolute defense to negligence but is merely a factor to be considered.  Freytag v. Commissioner, supra.

For reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Leonhart v. Commissioner, supra; Freytag v. Commissioner, supra; Stone v. Commissioner, T.C. Memo. 1996-230; Reimann v. Commissioner, T.C. Memo. 1996-84.

Reliance on a professional adviser can be inadequate when the taxpayer and his adviser knew nothing about the nontax business aspects of the venture.  Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983).  In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure.  Zfass

v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997), affg. T.C. Memo. 1996-167; Freytag v. Commissioner, supra at 888.

The Court's review of the evidence in this case leads to the conclusion that petitioners did not place reasonable reliance, in good faith, on a competent professional adviser in making their investment in the Arid Land partnership.

According to petitioner's testimony, after a perfunctory discussion with what he thought was an insurance agent, the agent recommended that he invest in a jojoba research and experimentation limited partnership. Petitioner implied that the switch in investment focus from life insurance to jojoba research was not remarkable to him, even though this was his first involvement with Desmond.

Petitioners did not receive, and apparently did not request, a private placement letter, prospectus, or any other document describing their investment. Petitioner testified that Desmond provided a copy of a bill passed by Congress encouraging jojoba cultivation and some newspaper articles on the subject that convinced him of the validity of the investment. Petitioner presented as exhibits items similar to those described in his testimony, but they all postdate his investment in Arid Land.

Petitioner also seemed relatively unconcerned by being solicited to invest in an entity called "New Jersey Agri 83-1" and being placed in one called Arid Land Research Partners.

Petitioners demonstrate little, if any, idea of how their investment was supposed to work. They knew nothing about jojoba research.

They did know that their maximum amount at risk was the $5,500 they paid in cash, and yet they had the potential to deduct more than twice that amount as a loss on their Federal income tax return for 1983. They relied, in making their investment, entirely on whatever they were told by Desmond. They did not share that information with the Court. They relied on Desmond even though this was their first contact with him and they assumed he would receive a commission from, and thus had an monetary interest in, making the sale.

The Court finds that petitioners failed to reasonably attempt to comply with the tax code and regulations. Their actions evidence a lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. Chamberlain v. Commissioner, supra.

Petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for the year 1983.

To reflect the foregoing,

Decision will be entered for respondent.