T.C. Memo. 2007-361

UNITED STATES TAX COURT

WILLIAM R. AND BETTY O. BASS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19207-06.          Filed December 5, 2007.

William R. and Betty O. Bass, pro se.

James H. Brunson III, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  In an "affected items" notice of deficiency sent June 19, 2006, respondent determined that petitioners are liable for additions to tax for 1982 as follows:

| | Additions to Tax | | |
|---|---|---|---|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1982 | $351 | * | $1,755 |

\* 50 percent of the interest on $7,020.

The notice also included a statement that interest would accrue and be assessed at 120 percent of the underpayment rate in accordance with section 6621(c). The additions to tax resulted from a final partnership proceeding involving a jojoba plant venture known as Cal-Neva Partners (Cal-Neva). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Petitioners resided in Georgia at the time that they filed their petition. In 1982, William R. Bass (petitioner) was employed by Lockheed Corp. as an accountant, and Betty O. Bass was employed by the Institute of Basic Youth Conflict as a typist.

On or about December 23, 1982, petitioners paid $5,000 for a limited partnership interest in Cal-Neva. The $5,000 was paid in reliance on representations by two persons associated with Cal-Neva whom petitioner met during a business trip to Nevada. Petitioner did not consult any independent persons regarding the viability of the jojoba plant venture or the claimed tax

consequences related to the venture, and he relied solely on promoters who had no known experience in jojoba plant farming.

Petitioner prepared a joint 1982 Form 1040, U.S. Individual Income Tax Return. As a result of losses claimed, petitioners requested a refund of $3,742.07, which had been paid by withholding and estimated tax payments. On Schedule C, Profit or (Loss) From Business or Profession, petitioner reported his business as Bass Enterprises, with gross receipts of $444.30 and a net loss of $25,827.79. Among the items shown as constituting the loss was a "Write-off of Farming Venture $13,150". Petitioner did not have a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., from Cal-Neva when he filed the 1982 return. The amount that petitioner deducted on Schedule C was his estimate of the amount to be claimed based on his conversations with the promoters of Cal-Neva at the time that he paid the $5,000.

On February 11, 1987, a Notice of Final Partnership Administrative Adjustment was sent to petitioners as a partner in Cal-Neva. In the notice, research and development expenses of $193,150 and amortization of organizational costs of $42 were disallowed to Cal-Neva. A petition on behalf of Cal-Neva was filed by Yolanda J. Benham (Benham), tax matters partner, as docket No. 6594-87. On October 18, 1993, the parties in docket No. 6594-87 filed a Stipulation to be Bound setting forth their

agreement that the outcome of the Cal-Neva case was to be determined in accordance with the outcome of Utah Jojoba I Research v. Commissioner, docket No. 7619-90. On January 5, 1998, the Court's opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6 (Utah Jojoba I Research), was filed, and, pursuant to that opinion, a decision sustaining respondent's adjustments was entered on January 8, 1998, in that case.

At the time the decision in Utah Jojoba I Research became final, the tax matters partner in the Cal-Neva case, Benham, could not be located. Ultimately, respondent filed a Motion for Entry of Decision in accordance with the Stipulation to be Bound. By order dated February 1, 2005, the partners of Cal-Neva were directed to show cause why respondent's Motion for Entry of Decision should not be granted. No response to the Court's order was received. Decision in the Cal-Neva case, docket No. 6594-87, was entered April 11, 2005. A copy of the decision was served on petitioner. The decision in docket No. 6594-87 became final July 11, 2005. The notice in the instant case was sent June 19, 2006, within 1 year of finality of the partnership proceeding. The additions to tax in issue here were based on $7,020, which the Internal Revenue Service (IRS) determined to be the deficiency in income tax attributable to the Cal-Neva deductions claimed by petitioners on Schedule C of their 1982 return.

Because miscellaneous deductions were not identified on Schedule C as attributable to Cal-Neva or to some other activity on the part of petitioners, the IRS estimated disallowed amounts as 50 percent of the miscellaneous expenses shown on Schedule C. Thus, the adjustment on which the additions to tax were calculated totaled $14,783.69, including the $13,150 attributable to Cal-Neva.

OPINION

Petitioners contend that they were not negligent and that the additions to tax are inappropriate in this case. They also assert that the tax on which the additions to tax are computed was overstated because of the manner in which the disallowed expenses attributable to Cal-Neva were determined, because items above and beyond $13,150 were not related to Cal-Neva but to other activities in which petitioner engaged. We accept petitioner's testimony in this regard. Our findings, however, are otherwise sparse. Petitioner provided no details concerning the partnership. His testimony at trial as to the extent of his investigation of Cal-Neva consisted of the following:

> I don't recall exactly how the investment possibility came into being. I don't know whether it was a phone call, letter, or what, but anyway, we were contacted regarding the investment.

> Since I grew up on a farm, I thought that it had some potential. I combined a trip to Nevada to meet with them with a trip by my employer, and I did meet with them. They seemed to be honest people. He had been in the airline industry, and she had worked as an

attorney. I don't know whether exactly she was a practicing attorney or what.

But they seemed to be people that understood enough about the investment, and that it was viable, and so I know at some point, having some knowledge of taxes on some of the past investments, I thought it would be a viable investment.

So I did enter into the investment, and paid the $5,000 initial investment amount, and the rest was financed, and interest payments were made for several years, five or six years, and ultimately the partnership went under.

Of course, if I had known that at the beginning, I definitely would not have been involved in it, especially since it looks like it was creating a problem from the standpoint of taxability. But at the time, it seemed to me that it was not an unusual investment to make.

And so after doing the limited amount of checking that I was able to do without spending days and days, I guess, in the area where they resided. I think it was during that time that they subsequently moved to Hawaii.

So my investigating from a due diligence to me was sufficient to let me know that it was a viable investment and it would stand up from a tax standpoint, and so that's basically my statement and my testimony in that regard.

In other reported cases, notably the opinion in Utah Jojoba I Research, the programs concerning Jojoba plants are described in detail. As summarized in Lopez v. Commissioner, T.C. Memo. 2001-278, affd. 92 Fed. Appx. 571 (9th Cir. 2004):

In the decided case, this Court held that the partnerships did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of research and experimental expenditures, the Court found

that the agreements between the partnerships and the proposed research and development contractor, U.S. Agri Research & Development Corp. (U.S. Agri), had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.  The Court stated that the activities of the partnerships were "another example of efforts by promoters and investors in the early 1980's to reduce the cost of commencing and engaging in the farming of jojoba by claiming, inaccurately, that capital expenditures in jojoba plantations might be treated as research or experimental expenditures for purposes of claiming deductions under section 174."  * * *  [Fn. ref. omitted.]

More details concerning the partnerships and the investors are found in the records and in the opinions in other cases in which we have sustained additions to tax arising out of investments in the jojoba plant partnerships.  As the Court stated in Kellen v. Commissioner, T.C. Memo. 2002-19:

We have decided many jojoba cases involving additions to tax for negligence and substantial understatement of tax liability. 15/  We have found the taxpayers liable for additions to tax for negligence in all of those cases; likewise, we have found the taxpayers liable for the addition to tax for substantial understatement of tax liability in all of those cases that have presented that issue.

_____

15/  See, e.g., Lopez v. Commissioner, T.C. Memo. 2001-278; Christensen v. Commissioner, T.C. Memo. 2001-185; Serfustini v. Commissioner, T.C. Memo. 2001-183; Carmena v. Commissioner, T.C. Memo. 2001-177; Nilsen v. Commissioner, T.C. Memo. 2001-163; Ruggiero v. Commissioner, T.C. Memo. 2001-162; Robnett v. Commissioner, T.C. Memo. 2001-17; Harvey v. Commissioner, T.C. Memo. 2001-16; Hunt v. Commissioner, T.C. Memo. 2001-15; Fawson v. Commissioner, T.C. Memo. 2000-195; Downs v. Commissioner, T.C. Memo. 2000-155; Glassley v. Commissioner, T.C. Memo. 1996-206; Stankevich v. Commissioner, T.C. Memo. 1992-458.

In Lopez v. Commissioner, supra, as in this case, the partnership in which the taxpayers invested had signed a Stipulation to be Bound by the outcome of Utah Jojoba I Research. Petitioners have not shown any facts that would distinguish this case from the others involving jojoba plant ventures.

Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under like circumstances. See Anderson v. Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; Neely v. Commissioner, 85 T.C. 934, 947 (1985). The focus of inquiry is the reasonableness of the taxpayer's actions in light of the taxpayer's experience and the nature of the investment. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973); see also Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996) (whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction."),

affg. T.C. Memo. 1994-217; Turner v. Commissioner, T.C. Memo. 1995-363.  In this regard, the determination of negligence is highly factual.

In his testimony quoted above, petitioner indicated that he spent very little time investigating the viability of an investment in jojoba farming or the likely tax treatment of that investment, relying on his experience in similar investments.  He offered in evidence at trial tax returns from earlier years on which he had deducted various partnership losses.  Among the papers that he presented, however, was a decision where this Court determined that he owed a deficiency and a negligence addition to tax for 1981.  Petitioner's experience is not persuasive evidence that he was qualified to assess the viability and the proper treatment of the Cal-Neva partnership, relying solely on the promoters.  Based on the limited effort described by petitioner and consistent with all opinions in similar cases, we conclude that petitioners failed to exercise reasonable care and are liable for the additions to tax for negligence.

Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year.  A substantial understatement of income tax exists if the amount of the understatement exceeds

the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6661(b)(1)(A).  Generally, the amount of an understatement is reduced by the portion of the understatement that the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any items with respect to which the relevant facts were adequately disclosed on the return.  Sec. 6661(b)(2)(B).  If an understatement is attributable to a tax shelter item, however, different standards apply.  First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper.  Sec. 6661(b)(2)(C)(i)(II).  Second, disclosure, whether or not otherwise adequate, will not reduce the amount of the understatement.  Sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs.  Petitioner has failed to show that substantial authority existed for the tax treatment of the Cal-Neva loss on his 1982 return.

Petitioner has not satisfied any of the conditions for avoiding application of the section 6661 addition to tax.  His inclusion of the loss on Schedule C without identification of the

Cal-Neva partnership does not constitute adequate disclosure. Accepting his testimony and concluding that the correct amount of the underpayment should have been calculated based on $13,150 in disallowed losses rather than $14,783.69, the underpayment would still be substantial for purposes of section 6661.

Petitioners have made several arguments that we address briefly. First, in their answering brief, petitioners argue for the first time that the notice in this case was sent after the expiration of the period of limitations. In this context, however, the period of limitations was suspended during the time that the partnership action was pending and for 1 year thereafter. Sec. 6229(d). The decision in the partnership action did not become final until the expiration of the time for filing a notice of appeal, which was 90 days after entry of the decision. Secs. 7481(a)(1), 7483. Thus, the notice in this case was sent approximately 3 weeks before the expiration of the period of limitations.

Second, petitioners argue that the underpayment should be further reduced by allowance of $5,000 as their out-of-pocket expenses in relation to the Cal-Neva investment. There is no authority, however, that would allow them to deduct their out-of-pocket amounts in the year of the investments. See, e.g., Marine v. Commissioner, 92 T.C. 958, 974-980 (1989), affd. without

published opinion 921 F.2d 280 (9th Cir. 1991); Viewweg v. Commissioner, 90 T.C. 1248, 1253-1255 (1988).

Third, following up on an inquiry made by the Court to respondent's counsel at the time of trial, petitioners assert that section 7491(c) should impose on respondent the burden of production with respect to the additions to tax in this case. That section applies to examinations commenced after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727. Respondent contends that the affected items in this case are merely a continuation of the proceeding commenced with respect to the partnership long before the effective date of section 7491(c).  Under the circumstances of this case, it is arguable that an examination of petitioners' return commenced after that effective date, because, due to petitioners' failure to attach a Schedule K-1, the disallowed deductions were determined only after examining petitioners' Schedule C.  This is not the normal proceeding in which adjustments based on the partnership proceeding and Schedules K-1 are automatically made and assessed with respect to the individual partners.  We offer no opinion, however, about whether the determination of additions to tax as affected items resulting from a partnership examination is a separate examination for purposes of the effective date of section 7491, and we need not decide whether the circumstances of

this case would lead to the conclusion that examination of petitioners' Schedule C was a separate examination.  The record in this case supports the application of the additions to tax without regard to the burden of production.  If the burden of production were on respondent, it would be satisfied in this case by the tax return, petitioner's testimony, and other evidence in the record.

Petitioners also ask that we reduce the amount of tax that was assessed after the partnership-level proceedings became final, which is not a part of the determination in the statutory notice in this case.  That assessment was a computational adjustment that the Commissioner is permitted to assess against the partner without issuing a notice of deficiency.  Secs. 6225, 6230(a)(1); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987); Maxwell v. Commissioner, 87 T.C. 783, 792 n.7 (1986).  We have no jurisdiction in this case over that computational adjustment.  For purposes of the additions to tax, however, we are satisfied by the evidence in this case that the correct amount of the underpayment is less than the amount assessed and that the correct amount should be used in computing the additions to tax.  That amount will be computed by determining the tax based on disallowance of the sum of $13,150.

Finally, petitioners assert that the investment in Cal-Neva was not a "tax-motivated transaction" for purposes of section

6621(c).  The increased rate of interest under section 6621(c) is 120 percent of the statutory rate imposed on underpayments under section 6601 if the underpayment exceeds $1,000 and is attributable to a tax-motivated transaction (as defined in section 6621(c)(3)).  The increased interest is effective only with respect to interest accruing after December 31, 1984, notwithstanding that the transaction was entered into before that date.  Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. per curiam without published opinion 795 F.2d 1005 (2d Cir. 1986).

This Court generally does not have jurisdiction to review assessment of section 6621(c) tax-motivated interest in affected item proceedings, even though the tax-motivated interest is an affected item that requires a partner-level determination.  See White v. Commissioner, 95 T.C. 209 (1990); Korchak v. Commissioner, T.C. Memo. 2005-244; see also Ertz v. Commissioner, T.C. Memo. 2007-15.  A narrow exception to this rule applies if a taxpayer has paid the assessed tax-motivated interest and subsequently invokes the overpayment jurisdiction of this Court under section 6512(b).  See Barton v. Commissioner, 97 T.C. 548 (1991).  Petitioners do not claim that they have paid the interest.

Petitioners nevertheless argue that this Court has jurisdiction to review interest assessments under section 6621(c)(4). Section 6621(c)(4) provides as follows:

> (4) Jurisdiction of Tax Court.--In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

Respondent presumably determined that the underlying deficiency in this case was a substantial underpayment attributable to a tax-motivated transaction. As explained above, this Court does not have jurisdiction to review the underlying deficiency. Because the underlying deficiency is not before this Court, section 6621(c)(4) cannot confer jurisdiction to determine what portion of such underlying deficiency is attributable to a tax-motivated transaction. Although each addition to tax at issue in this case is a "deficiency" within the meaning of section 6621(c)(4), section 6621(c)(2) excludes additions to tax from the definition of "substantial underpayment attributable to tax motivated transactions", thereby precluding review under section 6621(c)(4). White v. Commissioner, supra at 216; see Robnett v. Commissioner, T.C. Memo. 2001-17; Hunt v. Commissioner, T.C. Memo. 2001-15 (both involving jojoba venture partnerships).

We have considered the other arguments of the parties, and they are either irrelevant to our decision or lacking in merit.

To take account of the necessary recomputation of the additions to tax,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
