T.C. Summary Opinion 2001-141


UNITED STATES TAX COURT


DOLORES J. MYERS,  Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ESTATE OF JAMES T. MYERS, DECEASED AND
DOLORES J. MYERS, SURVIVING WIFE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15862-99S, 16247-99S.  Filed September 14, 2001.


Thomas R. Daniel, for petitioners.

Brian M. Harrington, for respondent.


MARVEL, Judge:  These cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decisions to be entered

_____

[1]All subsequent section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise
(continued...)

are not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined the following additions to tax with respect to petitioners' Federal income taxes:

Dolores J. Myers, docket No. 15862-99S

| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
|------|-----------------|-----------------|--------------------|--------------------|
| 1985 | $15.50 | 50 percent of interest due on $310 | -- | -- |
| 1986 | -- | -- | $24.60 | 50 percent of interest due on $492 |

Estate of James T. Myers, Deceased & Dolores J. Myers, Surviving Wife, docket No. 16247-99S

| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|------|-----------------|-----------------|
| 1982 | $185.00 | 50 percent of interest due on $3,700 |
| 1983 | 20.80 | 50 percent of interest due on $416 |

These cases were consolidated for trial, briefing, and opinion pursuant to Rule 141(a) because they present common issues of fact and law.

---

[1](...continued) indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The only issues[2] for decision are:

1) Whether respondent is obligated to offer petitioners terms of settlement regarding their investment in Jojoba Research Partners, Hawaii, a limited partnership (Jojoba), consistent with terms offered to other limited partners in Jojoba, and

2) whether petitioners are liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2) for the taxable years 1982, 1983, and 1985 and pursuant to section 6653(a)(1)(A) and (B) for the taxable year 1986.

## Background

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts herein by this reference. Mrs. Myers resided in Kailua, Hawaii, on the date the petitions were filed.

### The Myerses' Relationship With Ralph Matsuda

In 1980 or 1981, James and Dolores Myers (hereinafter referred to individually as Mr. Myers and petitioner and

---

[2]Mrs. Myers contended she was entitled to relief from joint and several liability in docket No. 16247-99S pursuant to sec. 6015(b), (c), or (f). On brief, however, she conceded that she improperly brought this claim under sec. 6015. We, therefore, do not address whether sec. 6015 is applicable herein.

Petitioners also contended that respondent improperly offered petitioners' settlement to the tax matters partner (TMP), who improperly rejected that offer on petitioners' behalf. In light of the testimony presented at trial and petitioners' failure to address this argument on brief other than as a requested finding of fact, we decline to address this issue. Rule 151(e).

collectively as the Myerses) became concerned about their retirement planning and began to attend investment seminars given by Ralph S. Matsuda, a certified financial planner. Mr. Matsuda had been employed as director of financial planning by American Savings & Loan from 1975 to 1980, worked for Progressive Investment Corp. as a director of financial planning from 1980 to 1982, and was a self-employed financial planner from 1982 through at least 1983. Petitioner knew he had a good reputation, and some of the Myers's friends had invested with him.

In 1981, the Myerses met with Mr. Matsuda to review their finances; Mr. Matsuda confirmed that they had insufficient retirement funds. Thereafter, Mr. Myers, and sometimes petitioner, attended numerous seminars presented by Mr. Matsuda. Petitioner trusted Mr. Myers to identify and implement investments appropriate to their retirement goals. Between 1981 and 1984, the Myerses made eight investments in ventures proposed by Mr. Matsuda. One of those investments was in Jojoba.

The Myerses' Investment in Jojoba

Jojoba had entered into agreements with U.S. Agri-Research and Development Corp. (Agri-Research) under which Agri-Research would provide agricultural research and development services with respect to the growing of jojoba plants. In connection with its activities, Jojoba planned to deduct research and development

expenditures under section 174, which, it expected, would generate tax benefits for its investors.

Mr. Myers, but not petitioner, attended Mr. Matsuda's seminar on Jojoba and received a private placement memorandum (PPM) in connection with a prospective investment in Jojoba. Petitioner did not examine the PPM until after Mr. Myers's death in 1984. The PPM, dated October 28, 1982, stated: "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK". The PPM also stated:

> PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO CONSTRUE THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS AS CONSTITUTING LEGAL OR TAX ADVICE. * * * INVESTORS ARE URGED TO CONSULT THEIR OWN COUNSEL AS TO ALL MATTERS CONCERNING THIS INVESTMENT.

> PRIOR TO THE SALE OF ANY UNITS, EACH PURCHASER AND/OR HIS OFFEREE REPRESENTATIVE SHALL HAVE THE OPPORTUNITY TO ASK QUESTIONS OF THE GENERAL PARTNER CONCERNING ANY ASPECT OF THE INVESTMENT DESCRIBED HEREIN. EACH INVESTOR MAY OBTAIN ANY ADDITIONAL INFORMATION NECESSARY TO VERIFY THE ACCURACY OF THE INFORMATION CONTAINED IN THIS MEMORANDUM TO THE EXTENT THAT THE GENERAL PARTNER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

> * * * * * * *

> NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR TAX ADVANTAGES WHICH MAY ACCRUE TO THE INVESTORS IN THE UNITS.

> EACH PURCHASER OF UNITS HEREIN SHOULD AND IS EXPECTED TO CONSULT WITH HIS OWN TAX ADVISOR AS TO THE TAX ASPECTS.

In addition to the general warnings, the PPM described the risk factors with respect to the projected Federal income tax consequences of an investment in Jojoba as follows:

The General Partner anticipates that a substantial portion of the capital contributions of the Limited Partners to the Partnership will be used for research and experimental expenditures of the type generally covered by Section 174 of the Code. However, prospective investors should be aware that there is little published authority dealing with the specific types of expenditures which will qualify as research or experimental expenditures within the meaning of Section 174, and most of the expenditures contemplated by the Partnership have not been the subject of any prior cases or administrative determinations.

\*     \*     \*     \*     \*     \*     \*

No ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code.

Before investing in Jojoba, Mr. Myers and petitioner discussed whether it was an appropriate addition to their retirement investments. On the basis of their own projections, they concluded it was. Mr. Myers and petitioner estimated an initial investment of approximately $20,000 in Jojoba would produce an annual stream of income of approximately $20,000, beginning after the jojoba beans reached maturity and were processed--6 or 7 years from the date of investment. Although petitioner was aware there might be agricultural problems, she believed that jojoba beans did not require a lot of maintenance and that there would be a market for jojoba products. She had seen jojoba products in stores and had read an article about jojoba beans being used in foods.

In December 1982, the Myerses decided jointly to invest $19,950 in Jojoba.[3] On or about December 12, 1982, Mr. Myers signed the offeree questionnaire, in which he indicated he did not intend to rely upon the advice of any other person, attorney, broker, or investment adviser in evaluating the merits and risks of the Jojoba investment. Mr. Myers also filled out a subscription agreement, a promissory note, and a limited guaranty agreement, each of which Mr. Myers and petitioner subsequently signed.

The subscription agreement confirmed the Myerses' agreement to purchase seven units in Jojoba for $19,950 and provided:

> 3. Subscriber hereby makes the following representations and appointment:
>
> (a) His offer to purchase is based solely upon information contained in the Partnership's Private Placement Memorandum and on his own independent evaluation, which may include the counsel of his own advisors;
>
> (b) He has received a copy of the Partnership's Private Placement Memorandum and the Agreement of Limited Partnership ("Partnership Agreement") and hereby confirms that no representations, other than those contained in the Partnership Private Placement Memorandum, have been made by the General partners or by any agent or affiliate thereof;

---

[3]On Nov. 26, 1985, petitioner assigned her interest in Jojoba (all seven units) to the Dolores L. Myers or Successor as Trustee Trust. The notice of deficiency for 1985 and 1986, however, was issued to petitioner in her individual capacity, the petition was filed in her individual capacity, and neither party has alleged that we do not have jurisdiction.

*    *    *    *    *    *    *

(h)  He has carefully reviewed and understands the various risks of an investment in the Partnership, including the risks summarized in the Private Placement Memorandum under "The Risks Factors" and described in greater detail elsewhere in the Memorandum; * * *

*    *    *    *    *    *    *

(j)  He understands that an investment in the Partnership is speculative and involves a high degree of risk, [and that] there is no assurance as to the tax treatment of items of Partnership income, gain, loss, [or] deductions of credit * * *

The Myerses paid for their seven units in Jojoba by check for $7,000 and by issuing the jointly signed promissory note for the balance, $12,950.  Mr. Matsuda received a commission on the sale of the Jojoba units to the Myerses.

Audit of Jojoba and Settlement Offers

In November 1988, respondent sent to Mr. Matsuda, Jojoba's tax matters partner (TMP), and to petitioners and other limited partners notices of final partnership administrative adjustment (FPAA) for the partnership taxable years 1982 through 1986.[4]  In July or August of 1991, some limited partners settled with respondent regarding the taxable years covered by the FPAAs.

---

[4]The record includes notices of final partnership administrative adjustment (FPAA) only for the partnership taxable years 1982, 1983, 1985, and 1986, the taxable years before us. The FPAAs for 1982 and 1983, however, indicate that the partnership taxable year 1984 was also adjusted.

On October 10, 1993, Mr. Matsuda, in his capacity as Jojoba's TMP, entered into a stipulation with respondent agreeing to be bound by this Court's decision in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. The facts regarding the underlying deficiency in Utah Jojoba I Research are substantially identical to those in this case. In Utah Jojoba I Research, we held that the partnership was not entitled to deduct its losses for research and development expenditures under section 174. On June 17, 1998, we entered a decision against Jojoba, the partnership involved in this case, adjusting the partnership items of Jojoba by disallowing the research and development expense deduction claimed for 1982 and upholding adjustments to Jojoba's reporting position regarding management fees and interest income for taxable years 1983 through 1986.

Tax Returns

For the taxable years 1982 and 1983, Jojoba allocated ordinary losses of $18,159 and $1,685, respectively, to the Myerses, as reflected in their 1982 and 1983 Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., issued by Jojoba, which the Myerses deducted on their 1982 and 1983 Federal income tax returns, respectively.

For each of the taxable years 1985 and 1986, Jojoba allocated an ordinary loss of $1,685 to petitioner, as reflected in her 1985 and 1986 Schedules K-1, issued by Jojoba, which

petitioner[5] deducted on her 1985 and 1986 Federal income tax returns, respectively.

On July 16, 1999, respondent issued a notice of deficiency to petitioners for 1982 and 1983 in which he determined that petitioners are liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) for 1982 and 1983 in connection with our decision entered against Jojoba.

On July 2, 1999, respondent issued a notice of deficiency to petitioner for 1985 and 1986 in which he determined that petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) for 1985 and pursuant to section 6653(a)(1)(A) and (B) for 1986 in connection with our decision entered against Jojoba.

## Discussion

### I. Consistent Settlement Offer

The first issue we must decide is whether respondent is required to enter into a consistent settlement agreement with petitioners under section 6224. We address this issue assuming, but not deciding, that the issue is properly before the Court. Petitioners contend that respondent is obligated to offer them terms of settlement consistent with settlement agreements entered

---

[5]Mr. Myers died in 1984. In late 1984, petitioner attended a class in Federal income tax at Hawaii Pacific College. In 1988 and 1989, petitioner completed classes in basic and intermediate income tax preparation at H&R Block.

into with other Jojoba partners because respondent improperly failed to notify petitioners of those other settlement agreements. Respondent contends that he did not act improperly with regard to the offers of settlement to Jojoba partners and is therefore not now obligated to extend to petitioners any offer of settlement. We agree with respondent.

Section 6224(c)(2) provides:

If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement [consistent settlement offer]. * * *

Under section 6224(c)(2), respondent was under no obligation to petitioners until (i) respondent entered into a settlement agreement with another Jojoba partner for a partnership taxable year at issue here, and (ii) petitioners requested an offer consistent with the terms of that settlement agreement. The parties do not dispute that respondent entered into settlement agreements with other Jojoba partners for 1982, 1983, 1985, and 1986 in July or August 1991. The only remaining question is whether petitioners properly requested a consistent settlement offer.

Section 301.6224(c)-3T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), sets forth the proper time and manner of requesting a consistent settlement. It provides that a

requesting partner must file his request for a consistent settlement offer with the Internal Revenue Service office that entered into the settlement on or before (i) the 150th day after the day on which the FPAA was mailed to the TMP, or (ii) the 60th day after the day on which the settlement was entered into, whichever is later. Id. The settlements occurred in 1991. Petitioners' first request for consistent settlement appears to have been incorporated in the petition in docket No. 16247-99S, filed with this Court on October 19, 1999. That request was not made as or when required by section 301.6224(c)-3T(c), Temporary Proced. & Admin. Regs., supra. Because petitioners failed to meet the requirements of section 6224(c)(2), respondent was not obligated to make petitioners a consistent settlement offer.

Petitioners allege that because respondent failed to notify them of other settlement agreements, they were prevented from making a proper and timely request under section 6224(c)(2). Petitioners therefore contend respondent's failure to so notify them renders the relief provided in section 6224(c)(2) meaningless unless respondent is now obligated to extend a settlement offer consistent with the terms of those prior settlement agreements. Respondent disagrees, contending that the Code obligates Jojoba's TMP, not respondent, to notify petitioners of any settlement agreement that respondent entered into with respect to Jojoba. We agree with respondent. As we

stated in <u>Vulcan Oil Tech. Partners v. Commissioner</u>, 110 T.C. 153, 160 (1998), affd. without published opinion sub nom. <u>Tucek v. Commissioner</u>, 198 F.3d 259 (10th Cir. 1999), affd. per curiam without published opinion sub nom. <u>Drake Oil Tech. Partners v. Commissioner</u>, 211 F.3d 1277 (10th Cir. 2000):

> At the time the * * * settlements involved * * * were entered into, there was no statutory or regulatory provision that placed on respondent the duty to notify each partner in a TEFRA partnership that a settlement was entered into. Rather, section 6223(g) and section 301.6223(g)-1T(b)(1)(iv), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6786 (Mar. 5, 1987), placed the duty on the TMP to keep each partner informed about settlement offers that had been entered into by partners. It was the TMP, not respondent, who had the duty of notification to other investor-partners of the fact and date that settlements were entered into.

Section 6230(f) provides that a TMP's failure to notify a partner or to perform any act on behalf of any partner, as required by either the statute or the regulations, does not affect the applicability of any partnership proceeding or adjustment to that partner. "Thus, despite the TMP's alleged failure to provide notice to movants of cash settlements * * *, movants herein have no right now to require respondent to enter into cash settlements." <u>Vulcan Oil Tech. Partners v. Commissioner</u>, <u>supra</u> at 161.

We hold that, under the circumstances of these cases, respondent is not obligated to extend to petitioners an offer of settlement consistent with the terms of settlement agreements made with other Jojoba partners. See secs. 6223(g), 6224(c)(2);

sec. 301.6223(g)-1T(b)(1)(iv), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6786 (Mar. 5, 1987); sec. 301.6224(c)-3T(c), Temporary Proced. & Admin. Regs., supra.

II.  Additions To Tax Under Section 6653(a)

The second issue we must address is whether petitioners are liable for additions to tax for negligence for the taxable years before us.

Petitioners' underpayments for the taxable years were fixed in conjunction with Jojoba's stipulation to be bound to our decision in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.  Section 6653 provides, in relevant part, that if any part of any underpayment is due to negligence, there shall be added to the tax (1) an amount equal to 5 percent of the underpayment and (2) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence and for the period beginning on the last date prescribed by law for payment of such underpayment and ending on the date of the assessment of the tax.  Sec. 6653(a)(1) and (2) (for taxable years 1982, 1983, and 1985); sec. 6653(a)(1)(A) and (B) (for taxable year 1986).  Respondent determined that all of petitioners' underpayments were attributable to negligence. Petitioners contend they reasonably relied on professionals,

sufficiently investigated the investment, and otherwise acted reasonably regarding their reporting positions.

For purposes of section 6653, negligence is defined as "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)); see Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person. Zmuda v. Commissioner, supra.

The Commissioner's decision to impose the negligence penalty is presumptively correct. Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th Cir. 1987). Petitioners have the burden of proving that the respondent's determination is erroneous and that they did what reasonably prudent people would have done under the circumstances. Rule 142(a); Hansen v. Commissioner, supra; Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Petitioners contend their underpayments are not due to negligence because they reasonably relied on the advice of Mr. Matsuda, whom they portray as a trusted professional and friend with a good reputation throughout the community. It is well settled that, although taxpayers may avoid liability for the additions to tax under section 6653(a) if they reasonably relied in good faith on a competent professional, United States v. Boyle, 469 U.S. 241, 250-251 (1985), "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered", Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). In order to successfully claim they reasonably relied on professional advice, petitioners must demonstrate that the professional on whom they relied had sufficient expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Id.; Becker v. Commissioner, T.C. Memo. 1996-538; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996); Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995).

Petitioners have not pointed to any advice the Myerses received from Mr. Matsuda relevant to their reporting positions in the taxable years before us. In 1981, Mr. Matsuda examined the Myerses' financial situation and determined they needed to

better plan for retirement. Although Mr. Myers attended Mr. Matsuda's seminar on Jojoba, or otherwise spoke with Mr. Matsuda regarding an investment in Jojoba, Mr. Myers indicated on his offeree questionnaire that he did not intend to rely on anyone's advice in evaluating the merits and risks of the investment. Petitioner did not attend a seminar or otherwise speak with Mr. Matsuda regarding Jojoba; she spoke only with Mr. Myers.[6] We see no basis for petitioners' claim that the Myerses relied on professional advice.

Furthermore, petitioners have not demonstrated that Mr. Matsuda had sufficient expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Although Mr. Matsuda was a certified financial planner, petitioners did not prove that Mr. Matsuda had expertise or knowledge regarding jojoba or could provide informed advice on the Jojoba investment or the tax consequences thereof.

Lastly, petitioners have failed to convince us that the Myerses reasonably relied on any advice Mr. Matsuda may have offered. The Myerses knew Mr. Matsuda was compensated for

---

[6]After Mr. Myers's death, petitioner spoke with the estate's probate attorney regarding the promissory note but never discussed the tax consequences or any other Jojoba matter with him. Discussions she may have had with Mr. Myers's stepmother were more for a basic understanding of tax than about Jojoba or its tax consequences. Petitioners do not contend they reasonably relied on the estate's probate attorney or Mr. Myers's stepmother.

selling and managing interests in Jojoba, yet they did not endeavor to independently examine or monitor this investment or otherwise seek independent advice regarding the tax consequences of their investment.  It is unreasonable to make investment decisions based solely on the advice of an interested party. Hill v. Commissioner, T.C. Memo. 1993-454.  The Myerses neglected to seek any independent advice although the offeree questionnaire, subscription agreement, and PPM repeatedly urged petitioners to do so and were replete with warnings of the risks associated with the investment and its tax consequences.

Petitioners have not demonstrated that the Myerses exercised reasonable care in deciding whether to invest in Jojoba and how to report the tax consequences of that investment or that they reasonably relied on Mr. Matsuda's advice regarding the Jojoba investment.  Accordingly, we hold that petitioners are liable for the additions to tax for negligence under section 6653(a) with respect to the underpayments for the taxable years before us.

III. Conclusion

We have carefully considered all remaining arguments made by petitioners for contrary holdings and, to the extent not discussed, conclude they are irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155.</u>