T.C. Memo. 2001-278

UNITED STATES TAX COURT

DOMINGO A. LOPEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17068-99.          Filed October 10, 2001.

<u>Denis M. McDevitt</u>, for petitioners.

<u>Rodney J. Bartlett</u>, for respondent.


MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>: Respondent determined that
petitioner was liable for the following additions to tax for the
years 1982 and 1983:[1]

---

[1]     Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the years at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

| | Additions to Tax | | |
|------|-----------------|-----------------|------------|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1982 | $517 | * | $2,585 |
| 1983 | 20 | ** | --- |

*   Fifty percent of the interest due on $10,340.
**  Fifty percent of the interest due on $393.

The issues for decision are: (1) Whether, for 1982 and 1983, petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for negligence, and (2) whether, for 1982, petitioner is liable for the addition to tax under section 6661 for a substantial understatement of tax. The issues in this case relate to the participation of petitioner as a limited partner in a partnership known as Blythe Jojoba I Research, Ltd. (Blythe I or the partnership).

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was La Jolla, California.

Petitioner is a medical doctor specializing in dermatology. Petitioner has been engaged in the private practice of dermatology in the San Diego, California, area since 1980. For approximately 20 years prior to 1980, petitioner worked as a physician in the U.S. Navy. Petitioner was born and raised in the U.S. Territory of Puerto Rico, where petitioner's father was an accountant and a coffee bean and citron fruit farmer. While

growing up, petitioner occasionally assisted his father on the coffee bean and citron plantation.

Shortly after his entry into medical practice, petitioner began to attend various business and financial seminars in order to become more educated about efficiently sustaining a private medical practice. During one of these seminars in 1982, petitioner met Thomas Moore (Mr. Moore), a financial adviser with Coordinated Financial Services (CFS) of Salt Lake City, Utah. Mr. Moore was a promoter for Blythe I.

Petitioner engaged Mr. Moore to conduct a comprehensive analysis of petitioner's personal and business financial situation. One of Mr. Moore's recommendations was to "invest in a tax-sheltered program designed to generate $55,000 of deductions in 1982", and thus he introduced petitioner to the Blythe I offering, which was being promoted as an agricultural research and development partnership. According to petitioner, Mr. Moore had no apparent previous experience with agricultural or research and development partnerships.

Mr. Moore provided petitioner with a fairly voluminous private placement memorandum[2] (the offering), which described the proposed investment in and the activities to be conducted through Blythe I. Petitioner reviewed the document and then passed along

---

[2] The private placement memorandum consisted of some 47 pages, plus eight exhibits, and a table of contents.

the offering to his certified public accountant and tax attorney, Denis McDevitt (Mr. McDevitt), whom petitioner had recently hired to prepare his income tax returns. After reviewing the offering, Mr. McDevitt advised petitioner that he had no problem with petitioner's investment in Blythe I. Petitioner did not consult any independent expert in the area of agriculture or jojoba plants as to whether jojoba oil or any other jojoba derivative had a potentially lucrative commercial market. Petitioner, nevertheless, invested in Blythe I.

On his joint 1982 Federal income tax return, petitioner reported wages of $84,702 from his medical practice and other employment, as well as $14,336 from his wife's employment. Petitioner also reported interest income of $579, taxable dividend income of $118, a State income tax refund of $1,491, a capital loss of $2,000, and taxable pension income of $25,633. Additionally, petitioner reported a loss of $20,925 from Blythe I. Thus, petitioner reported total income of $103,934 and a total tax liability of $24,211.

On his joint 1983 Federal income tax return, petitioner reported wages of $37,239 from his medical practice and other employment, as well as $15,042 from his wife's employment. Petitioner also reported interest income of $610, a State income tax refund of $274, and taxable pension income of $26,851. Additionally, petitioner reported a loss of $981 from Blythe I.

Thus, petitioner reported total income of $79,035 and a total tax liability of $11,524.

Blythe I was audited by the Internal Revenue Service, and a Notice of Final Partnership Administrative Adjustment was issued to the partnership. The partnership initiated a TEFRA proceeding in this Court, and a decision was entered in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which involved a similar jojoba investment program.[3] In the decided case, this Court held that the partnerships[4] did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of research and experimental expenditures, the Court found that the agreements between the partnerships and the proposed research and development contractor, U.S. Agri Research & Development Corp. (U.S. Agri), had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures. The Court stated that the activities of the partnerships were "another example of efforts by promoters and investors in the early 1980's to reduce

---

[3] The tax matters partner of Blythe I signed a stipulation to be bound by the outcome of Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.

[4] Eighteen docketed cases were bound by stipulation by the outcome of Utah Jojoba I Research v. Commissioner, supra.

the cost of commencing and engaging in the farming of jojoba by claiming, inaccurately, that capital expenditures in jojoba plantations might be treated as research or experimental expenditures for purposes of claiming deductions under section 174." Id.

As a result of Blythe I's TEFRA proceeding, petitioner and his wife were assessed tax deficiencies of $10,340 for 1982 and $394 for 1983, plus interest. Subsequently, respondent issued a notice of deficiency to petitioner and his wife for 1982 and 1983 for affected items, determining that they are liable for the additions to tax for negligence under section 6653(a)(1) and (2) for 1982 and 1983 and a substantial understatement of tax under section 6661 for 1982. These additions to tax are the subject of the instant case. Petitioner's wife did not petition this Court and did not testify at trial.

The first issue is the additions to tax for negligence under section 6653(a)(1) and (2) for both years at issue. Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Respondent's

determinations in a notice of deficiency are presumed correct, and petitioner must establish otherwise.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); cf. sec. 7491(c).[5] Respondent determined that petitioner's underpayments were due to negligence.  Petitioner, therefore, has the burden of proving he was not negligent in deducting his share of the partnership's losses.  <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791 (1972); <u>Anderson v. Commissioner</u>, T.C. Memo. 1993-607, affd. 62 F.3d 1266 (10th Cir. 1995).

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under like circumstances.  <u>Anderson v. Commissioner</u>, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985); <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206.  The focus of inquiry is on the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment.  <u>Henry Schwartz</u>

---

[5]     The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, added sec. 7491(c), which places the burden of production on the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998.  Petitioner does not contend, nor is there evidence, that his examination commenced after July 22, 1998, or that sec. 7491 is applicable in this case.

Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Greene v. Commissioner, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999); Glassley v. Commissioner, supra; Turner v. Commissioner, T.C. Memo. 1995-363.  Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction."  Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see Greene v. Commissioner, supra.

A taxpayer may avoid liability for negligence penalties under some circumstances if the taxpayer reasonably relied on competent professional advice.  See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991).  Such reliance, however, is "not an absolute defense to negligence, but rather a factor to be considered."  Id.  Moreover, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Id.

The facts pertinent to the instant case, relating to the structure, formation, and operation of Blythe I are as discussed in Utah Jojoba I Research v. Commissioner, supra, with the exception of a few specific dates and dollar amounts.  Blythe I was organized in December 1982 as a limited partnership for the

described purpose of conducting research and development (R & D) involving the jojoba plant. The offering, dated November 22, 1982, provided for a maximum capitalization of $2,968,000 consisting of 350 limited partnership units at $8,480 per unit. Each unit required a cash downpayment of $2,500 and a noninterest-bearing promissory note in the principal amount of $5,980 payable in 10 annual installments with an acceleration provision in the event of default. The offering was limited to investors with a net worth (exclusive of home, furnishings, and automobiles) of $150,000, or investors whose net worth was $50,000 (exclusive of home, furnishings, and automobiles) and who anticipated that, for the taxable year of the investment, they would have gross income equal to $65,000, or taxable income, a portion of which, but for tax-advantaged investments, would be subject to a Federal income tax rate of 50 percent.

Petitioner invested in four limited partnership units, which required an initial downpayment of $10,000 and execution of a promissory note for $23,920, with payments of $2,600 each year from 1983 through 1985, $2,100 per year from 1986 through 1991, and a final payment of $3,520 in 1992 on the promissory note. The record reflects that the $10,000 due in 1982 and the $2,600 due in 1983, totaling $12,600, were paid. In 1984, petitioner defaulted on the remainder due on the promissory note.

The offering identified William Kellen (Mr. Kellen) as the general partner and U.S. Agri as the contractor for the R & D program under an R & D agreement. Additionally, a license agreement between Blythe I and U.S. Agri granted U.S. Agri the exclusive right to utilize technology developed for Blythe I for 40 years in exchange for a royalty of 85 percent of all products produced. The offering included copies of both the R & D agreement and the license agreement. The R & D agreement was executed concurrently with the license agreement.

According to its terms, the R & D agreement expired upon the partnership's execution of the license agreement. Since the two were executed concurrently, amounts paid to U.S. Agri by the partnership were not paid pursuant to a valid R & D agreement but were passive investments in a farming venture under which the investors' return, if any, was to be in the form of a royalty pursuant to the licensing agreement. Thus, as this Court held in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, the partnership was never engaged in research or experimentation, either directly or indirectly. Moreover, this Court found in Utah Jojoba I Research v. Commissioner, supra, that U.S. Agri's attempts to farm jojoba commercially did not constitute research and development, thereby concluding that the R & D agreement was designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited

partners through large upfront deductions for expenditures that were actually capital contributions. The Court concluded further that the partnership was not involved in a trade or business and had no realistic prospect of entering into a trade or business with respect to any technology that was to be developed by U.S. Agri.

Petitioner here contends that his investment in Blythe I was motivated solely by the potential to earn a profit. Petitioner contends further that his reliance on the advice of his certified public accountant and tax attorney, Mr. McDevitt, should absolve him of liability for the negligence penalty in this case. Petitioner also argues that, taking into account his experience and the nature of the investment in Blythe I, he exercised the due care that a reasonable and ordinarily prudent person would have exercised under like circumstances. For the reasons set forth below, the Court does not agree with petitioner's contentions.

First, the principal flaw in the structure of Blythe I was evident from the face of the very documents included in the offering. A reading of the R & D agreement and licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered ineffective the R & D agreement because of the concurrent execution of the two documents. Thus, the partnership was never

engaged, either directly or indirectly, in the conduct of any research or experimentation.  Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement.  Any experienced attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the licensing agreement canceling out the R & D agreement.  However, petitioner's tax attorney, Mr. McDevitt, obviously failed to review diligently the offering prior to advising petitioner to invest in Blythe I.  It is also clear from the record that petitioner failed to scrutinize carefully the offering himself.

Secondly, in making his investment in Blythe I, petitioner relied on the advice of his certified public accountant and tax attorney, Mr. McDevitt, and Mr. Moore, who was a promoter for the partnership.  Mr. McDevitt made only a cursory review of the offering and made no objection to petitioner's investment in Blythe I.  When asked at trial whether he endorsed the investment, Mr. McDevitt stated that "endorse might be too strong a word."  Mr. McDevitt did not give petitioner a written opinion about the investment, nor did he conduct any independent research or consult any type of agricultural or jojoba plant expert about the investment.  Instead, he relied solely on the representations made in the offering.

Moreover, at trial Mr. McDevitt claimed that, at the time he advised petitioner about Blythe I, he had prior experience with agricultural partnerships and research and development partnerships; yet, no evidence about the amount, scope, and nature of such experience was produced. Mr. McDevitt failed to conduct any independent investigation to determine whether the specific research and development proposed to be conducted by or on behalf of the partnership would have qualified for deductions under section 174. It is also notable that Mr. McDevitt had no background or experience in the area of Jojoba plants.

There is no evidence in the record to suggest that petitioner or his wife ever questioned Mr. McDevitt about the facts and/or legal analysis upon which he based his recommendations. Further, the record is devoid of any evidence that petitioner asked Mr. McDevitt to explain the Blythe I investment to him, particularly those portions of the offering that he had opted not to read or apparently was unable to understand.

The facts in this case are similar to those in Glassley v. Commissioner, T.C. Memo. 1996-206, in which this Court found that the taxpayers:

> acted on their fascination with the idea of
> participating in a jojoba farming venture and their
> satisfaction with tax benefits of expensing their
> investments, which were clear to them from the

promoter's presentation.  They passed the offering
circular by their accountants for a "glance" * * *.

Similarly, petitioner here acted on his enthusiasm for the potential uses of jojoba and acted with knowledge of the tax benefits of making the investment.  The evidence in this record suggests that the nature of the advice given by Mr. McDevitt was highly generalized and based primarily on a mere cursory review of the offering rather than on independent knowledge, research, or analysis.  Petitioner failed to show that Mr. McDevitt had the expertise and knowledge of the pertinent facts to provide informed advice on the investment in Blythe I.  See Freytag v. Commissioner, 89 T.C. at 888.  Accordingly, petitioner failed to establish that his reliance on the advice of Mr. McDevitt was reasonable or in good faith.  See Glassley v. Commissioner, supra.

The Court next examines petitioner's reliance on the advice of Mr. Moore.  Petitioner admitted that he relied heavily on the advice of Mr. Moore and the information contained in the offering in making his investment in Blythe I.  Yet, Mr. Moore also had no background or expertise in the areas of agriculture or jojoba plants.  In fact, it appears that nearly all other potential investments recommended to petitioner by Mr. Moore in his financial analysis were real estate investments, and that Blythe I was the only investment of an agricultural nature advocated by

him. More importantly, because Mr. Moore had a personal profit motive in selling this investment to clients, he had a conflict of interest in advising petitioner to purchase the limited partnership interests.[6] The advice petitioner received from Mr. Moore fails as a defense to negligence due to his lack of competence to give such advice and the clear presence of a conflict of interest. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Petitioner's reliance on the advice of Mr. Moore was unreasonable under the circumstances.

Outside of Mr. McDevitt and Mr. Moore, petitioner made no other inquiry into the viability of this partnership's proposed research and operations. The Court finds it notable that the offering listed at least 15 "potential uses of jojoba nuts"; yet, petitioner failed to explore the plausibility of any of those potential uses. Some of the potential uses listed in the offering were various lubricants for high-speed or high-temperature machinery, cosmetics, shampoos and soaps, sunscreens, pharmaceuticals, cooking oils, disinfectants, polishing waxes, corrosion inhibitors, candles, animal feed supplements, and fertilizer. Being a physician, it seems logical that petitioner would have had some access to information about the commercial

---

[6] Petitioner acknowledged in his testimony that he knew Mr. Moore was receiving commissions for finding investors to purchase the limited partnership interests.

use of jojoba in the pharmaceutical arena; however, petitioner failed to pursue this possibility.  Petitioner's failure to investigate independently any of the enumerated potential uses of jojoba plants was unreasonable under the circumstances.

Petitioner had no legal background or training, limited agricultural background or training, and no prior background with jojoba plants; yet, he consulted few, if any, sources of such information prior to investing in Blythe I.  Petitioner's limited youthful background with the growth and sale of coffee and citron should have educated petitioner that no two plant species respond to identical treatment and that each has a different potential for commercial production and sales.[7]  Petitioner appears to argue that it would have been difficult for him to locate an appropriate expert to examine the investment.  On the contrary, the Court does not believe that petitioner would have experienced a great degree of difficulty in contacting the agricultural department of a nearby college or university or going to another reliable source to inquire about the research and development of jojoba plants and their potential commercial usage, if any.  A

---

[7]    Indeed, petitioner testified that the commercial market for coffee was much larger and more lucrative than that for citron.

reasonable and ordinarily prudent investor would have at least attempted to make this type of inquiry under the circumstances.[8]

Petitioner was not a naive investor and should have recognized the need for independent professional advice. See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Glassley v. Commissioner, T.C. Memo. 1996-206. In fact, the offering cautioned that prospective investors should not "construe this memorandum or any prior or subsequent communications as constituting legal or tax advice" and urged investors to "consult their own counsel as to all matters concerning this investment." The offering was replete with statements, including the cover page statement that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK", warning of tax risks involved with the investment and the highly speculative nature of the commercial viability of the jojoba plant. The offering contained inconsistent information, such as the statement on page 9 that the general partner "has limited experience in dealing in

---

[8] Petitioner testified that, at the time of his investment in Blythe I, he was aware of jojoba research being conducted at the University of California at Riverside and the University of Arizona at Tucson. Also, in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, the Court noted that there were experimental jojoba plantations located at the University of California at Riverside, of which the general partner of Blythe I, Mr. Kellen, was aware.

Jojoba beans and is mainly relying on the R & D Contractor to develop technology and plant cultivars over the term of the R & D Agreement", contrasted with the statement on page 34 that the general partner "pioneered the development of the Blythe Airport as an alfalfa ranch and jojoba farming in Desert Center" and was "familiar with the development of jojoba, citrus, vineyards, alfalfa and asparagus."  Such inconsistencies should have raised a healthy suspicion in the mind of a reasonable and ordinarily prudent investor, even one lacking any legal, tax, or agricultural background.  However, petitioner did not carefully read the offering, nor did he make any effort to have the investment explained to him prior to committing to invest in Blythe I.

The Court is mindful that the Court of Appeals for the Ninth Circuit (Ninth Circuit), the court to which an appeal in this case would lie, has held that experience and involvement of the general partner and the lack of warning signs could reasonably lead investors to believe they were entitled to deductions in light of the undeveloped state of the law regarding section 174. See Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380.  In its holding, the Ninth Circuit explained that the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be "in connection with" a trade or

business for purposes of qualifying for an immediate deduction under section 174. However, in the instant case, the partnership was neither engaged in a trade or business nor conducting research and development, either directly or indirectly. Additionally, the experience in jojoba research and development of the general partner of Blythe I, Mr. Kellen, was questionable, at best, as evidenced by conflicting statements in the offering. Also, it is apparent from the evidence presented in this case that Mr. Kellen had minimal involvement in the partnership. Petitioner is precluded from relying upon a "lack of warning" as a defense to negligence, when there is no evidence that a reasonable investigation was ever made, and the offering materials contained many warnings of the tax risks associated with the investment.

On this record, the Court finds that petitioner did not exercise the due care of a reasonable and ordinarily prudent person under the circumstances. Consequently, the Court holds that petitioner is liable for the negligence additions to tax under section 6653(a)(1) and (2) for each of the years at issue. Respondent is sustained on this issue.

The second issue is whether petitioner is liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509,

sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year. A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6661(b)(1)(A). Generally, the amount of an understatement is reduced by the portion of the understatement that the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return. Sec. 6661(b)(2)(B). If an understatement is attributable to a tax shelter item, however, different standards apply. First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more likely than not proper. Sec. 6661(b)(2)(C)(i)(II). Second, disclosure, whether or not adequate, will not reduce the amount of the understatement. Sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. Petitioner has failed to

show that substantial authority existed for the tax treatment of the Blythe I loss on his 1982 return.

Adequate disclosure of the tax treatment of a particular item may be made either in a statement attached to the return or on the return itself, if it is in accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B. 680. Sec. 1.6661-4(b) and (c), Income Tax Regs. The record indicates that petitioner did not attach a statement to his 1982 return disclosing the specific facts surrounding the Blythe I loss deduction. Rev. Proc. 83-21, supra, applicable to tax returns filed in 1983, lists information that would be deemed sufficient disclosure if listed on the return itself, without the necessity of attaching an additional statement to the return. However, none of the specific tax items referenced in Rev. Proc. 83-21, supra, are relevant to the instant case. If disclosure is not made in compliance with the regulations or the revenue procedure, adequate disclosure on the return may still be satisfied if sufficient information is provided to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). However, a mere claiming of the loss, without further explanation, is not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted. Petitioner has failed to show that the relevant facts pertaining to his

Blythe I loss deduction were adequately disclosed on his 1982 return.[9]

Finally, section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. This Court reviews the Secretary's failure to waive the addition to tax for abuse of discretion. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 235 (1998). Petitioner argues that he acted in good faith and reasonably relied upon the advice of Mr. McDevitt in claiming the relevant loss. However, nothing in the record indicates that petitioner requested a waiver for good faith and reasonable cause under section 6661(c). In the absence of such a request, this Court cannot review respondent's determination for an abuse of discretion. See id. In any event, petitioner has not shown that he met the tests of reasonable cause and good faith.

Petitioner failed to prove that he had substantial authority for his treatment of the partnership loss and that he adequately disclosed the relevant facts of that treatment. The understatement upon which the addition to tax was imposed was $10,340. The understatement is substantial because it exceeds

---

[9]    As noted earlier, even if an adequate disclosure had been made on the return, such disclosure would not reduce the amount of the understatement attributable to a tax shelter item.

the greater of $5,000 or 10 percent of the amount required to be shown on the return.[10]  On this record, the Court holds that petitioner is liable for the addition to tax under section 6661(a) for a substantial understatement of tax for 1982. Respondent is sustained on this issue.

<u>Decision will be entered</u>

<u>for respondent.</u>

---

[10]  The amount required to be shown on the return was $34,551, 10 percent of which equals $3,455.10.